The South Joplin Land Co. v. Case.

THE SOUTH JOPLIN LAND COMPANY v. CASE *et al.*,
*Appellants*.

DIVISION ONE.

1. **Corporation:** PROMOTERS: TRUST AND CONFIDENCE. Persons, usually called promoters, who project and form a corporation by soliciting and procuring others to subscribe for and take shares of stock for the purpose of selling to the corporation property which they own or have a right to acquire by executory contract, occupy a position of trust and confidence, and it devolves upon them to make full disclosures of their interest in and relation to the property.

2. —: —: —. Where the promoters form such association or initiate its formation, from that time they stand in a confidential relation to each other and to all others who may subsequently become members or subscribers, and it is not then competent for any of them to purchase property for the purpose of such a company and sell it at an advance without a free disclosure of the facts.

3. **Practice:** AMENDMENT: NON-REVERSIBLE ERROR. It is not a ground of reversal of a judgment that the trial court permitted an amendment of a petition by interlineation, even where such amendment is the averment of an additional demand against the defendant.

*Appeal from Jasper Circuit Court.*—HON. M. G. MCGREGOR, Judge.

AFFIRMED.

*L. P. Cunningham* and *Thomas Dolan* for appellants.

(1) There was not in law or equity any sale of the notes. Nothing but the land was sold. 1 Story on Contracts, pp. 40, 45; Chitty on Contracts, pp. 136, 591; *Taylor v. Williams*, 45 Mo. 80; *Underwood v. Underwood*, 48 Mo. 527; *Sitton v. Shipp*, 65 Mo. 305; Benjamin on Sales [2 Ed.] 1; *Williamson v. Berry*, 8 How.

( U. S. ) 544. ( 2 ) Case was but a stockholder, and had a right to make $2,000 profit upon the land, and as much more as he could. He was not required to inform plaintiff or anybody else what he ( Case ) was paying for the land. He was the absolute purchaser of the land from Carter, and had a right to fix any price he saw proper. *Hardwicke v. Jones*, 65 Mo. 54 ; Angell & Ames on Corporations, sec. 313 ; *Verplanch v. Ins. Co.*, 1 Edward, Ch. ( N. Y.) 87 ; *Hodges v. Screw Co.*, 1 R. I. 351 ; *Bayless v. Orne*, 1 Freeman ( Miss. Ch. ) 174 ; *Railroad v. Freeman*, 37 Kan. 606 ; *Railroad v. Wilkerson*, 83 Mo. 237 ; *Spurlock v. Railroad*, 90 Mo. 200 ; 3 Parsons on Contracts [ 5 Ed. ] p. 385, note ; *Medbury v. Watson*, 6 Met. ( Mass. ) 259 ; *Hemmer v. Cooper*, 8 Allen ( Mass. ) 334 ; *Bishop v. Small*, 63 Maine, 12 ; *Holbrook v. Connor*, 60 Maine, 578 ; *Cooper v. Levering*, 106 Mass. 79. ( 3 ) It is not applicable to press that Redburn, being a director of plaintiff, held a fiduciary relation ; for the sale was in fact made to the individuals by Redburn as agent for Case, and afterwards they formed themselves for convenience into the corporation plaintiff. *Hogan v. Hogan*, 71 Mo. 610 ; *Chrisman v. Hodges*, 75 Mo. 413 ; *Pomeroy v. Benton*, 57 Mo. 531 ; *Attaway v. Bank*, 93 Mo. 485. ( 4 ) Knowing that Redburn was Case's agent, and plaintiff then making him a director cannot now complain and say that Redburn thereby held a fiduciary relation to the plaintiff. *Fitzsimmons v. Express Co.*, 40 Ga. 336 ; *Rowe v. Stevens*, 3 Jones & Sp. 189 ; *Spyer v. Fisher*, 5 Jones & Sp. 93 ; *Lewis v. Slack*, 27 Mo. App. 119 ; *Attaway v. Bank*, 93 Mo. 485 ; *Rupp v. Sampson*, 16 Gray ( Mass. ) 398 ; *Muller v. Keetzleb*, 7 Bush ( Ky. ) 253 ; *Ins. Co. v. Church*, 21 Ohio St. 492 ; *Anderson v. Weiser*, 24 Iowa, 428. The circuit court erred in allowing the amendment of the petition by interlineation. R. S., secs. 3567, 3573, 3576, 3577 ; *Skinner's Ex'r v. Hutton*, 33 Mo. 244 ; *Ins. Co. v. Ins. Co.*, 4 Mo. App. 578. ( 5 ) The finding and decree should have been in favor of

the defendants upon the facts proved as to both the notes and $2,000. Benjamin on Sales [ 2 Ed. ] 1 ; *Williamson v. Berry*, 8 How. ( U. S. ) 544 ; 5 Wait's A. & D., p. 539, and cases cited ; *Hardwicke v. Jones*, 65 Mo. 54 ; Angell & Ames on Corporations, sec. 313 ; *Verplanch v. Ins. Co.*, 1 Edward, Ch. (N. Y. ) 87 ; *Hodges v. Screw Co.*, 1 R. I. 351 ; *Bayless v. Orne*, 1 Freeman ( Miss. Ch.) 174 ; *Railroad v. Freeman*, 37 Kan. 606 ; *Railroad v. Wilkerson*, 83 Mo. 237 ; *Bank v. Aull*, 80 Mo. 199.

*E. O. Brown, Galen Spencer* and *Karnes, Holmes & Krauthoff* for respondent.

(1) One occupying a trust relation can make no secret profit by reason of his position, and this principle applies to the promoter of a corporation. *Calico Co. v. Green*, L. R. 5 Q. B. Div. 109 ; *Twycross v. Grant*, L. R. 2 C. P. Div. 469 ; *Phosphate Co. v. Erlanger*, L. R. 5 Ch. **Div.** 73 ; *Hinchens v. Congrev*, 4 Russ. Ch. 562 ; *Hinchens v. Congrev*, 1 Russ. & Myler, 150 ; *Beck v. Kautorowitz*, 3 Kay. & J. 230 ; *Benson v. Hearthorn*, 1 Yo. & Col. 326 ; *Rawlins v. Wickham*, 3 DeGex. & J. 304. (2) The rule has always been that any question as to the fairness of the bargain was immaterial ; although what the company received was worth all or more than it paid, this constitutes no reason why the trustee should not disgorge. *Railroad v. Blakie*, 1 Macq. 461 ; *Pearson's Case*, 5 Ch. Div. 336, 341 ; *Calico Co. v. Green*, L. R. 5 Q. B. Div. 109 ; *Tyrell v. Bank*, 10 H. L. Cas. 26 ; *Michoud v. Girod*, 4 How. 503 ; *Coal Co. v. Sherman*, 30 Barb. 553. "The rule governs cases where there was no fiduciary relation at the time the contract was made, but where the person who makes it afterwards becomes a promoter and the company becomes entitled to the benefit of his contract or liable to perform its provisions." The leading opinion was delivered by Lord Chief Justice COCKBURN and the conclusion reached that the rule applies to all contracts entered into with an intention that a corporation shall

be formed to carry it out.    And this view was affirmed
on appeal to the House of Lords.    *Twycross v. Grant*,
25 W. R. 586; *Iron Co. v. Bird*, 33 Ch. Div. 85, 94;
60 L. T. Rep. 501; *Cornell v. Honey*, 8 C. P. 328;
*Phosphate Co. v. Hartmont*, 5 Ch. Div. 394.  (3)  In
a New York case based upon similar facts, it was
held that there was no difference in principle between a
purchase made by one on behalf of the corporation
after it is formed and a purchase made with the design
to form a corporation to carry out the contract.  *Getty
v. Devlin*, 54 N. Y. 403; *Miller v. Barber*, 66 N. Y.
558; *Getty v. Devlin*, 70 N. Y. 504.

BLACK, J.—This is a suit in equity brought by the
plaintiff corporation against Geo. C. Case and F. M.
Redburn to recover the value of certain notes amount-
ing to $2,060.   During the trial the petition was
amended so as to include a demand against Case alone
for the further sum of $2,000.   There was a decree
according to the prayer of the petition as amended.

Dr. Carter who resided at Carthage owned three
hundred and twenty acres of land adjoining Joplin.
Part of the land had been laid off into an addition, and
Carter had sold some of the lots, but he held notes for
the deferred payments on the lots so sold.   These notes
were supposed to aggregate $3,000 or $4,000.   In March,
1887, Carter gave Case a written option contract by the
terms of which he agreed to convey and transfer to Case
the land and unsold lots, the notes and a right-of-way
claim against a railroad company, for the consideration
of $32,000, one-third cash and the balance in deferred
payments to be secured by deed of trust on the land.
The contract had thirty days to run, and if not per-
formed by Case within that time he forfeited the $500
paid at the date of the contract.   Though this contract
stated a consideration of $32,000, it is shown beyond all
doubt that Case was to pay only $30,000 for all the
property.   When Case procured the contract he had in

contemplation the organization of a corporation to take the property so purchased and this was known to Carter, for he then agreed to take two shares of stock, if the stock should not all be taken by other persons.

In April, and a few days before the option contract expired, Case employed the defendant Redburn to organize a corporation with a stock of thirty-two shares of $1,000 each for the purpose of taking the property of Carter.   Joplin then enjoyed what is commonly called a boom, and Redburn succeeded in placing all the stock in an informal way in one day, reserving to himself and to Case each a share.   Redburn represented to the persons agreeing to take the stock that the price to be paid Carter was $32,000, and that the proposed company would get the land, unsold lots and the notes held by Carter amounting, he said, to $3,000 or $4,000, and also the claim for right of way; and it was on these representations that the parties agreed to take the stock. Most of the persons agreeing to take stock knew that Redburn represented Case, and that Case held the option.   Some of them did not know, at that time, that Case had anything to do with the matter.   Case resided in Joplin and was perfectly cognizant of all that Redburn had done and of the representations that he had made.

The evidence of Redburn and Case is to the effect that on the next day Case told Redburn the notes would not go in and he must go and notify the parties to that effect.   Case says he did not give Redburn authority to say the notes would be turned over to the company, and Redburn gives us to understand that he misunderstood Case's directions in that respect.   Redburn says he did then notify some of the parties that the notes and right-of-way claim would not go in as part of the sale.   There is a uniformity of statement on the part of the persons who agreed to take stock that they were not informed that the notes would not be included, until after the articles of association had been signed and they had

paid for their stock.   Our conclusion from the evidence is, that this notice that the notes were not to go in the transaction with the company was an afterthought on the part of Case, brought about by the fact that the stock commanded a premium.   In a day or so after the stock had been thus informally placed, many of the stockholders met, signed articles of association, formally subscribed for stock, and paid their subscriptions.   Directors were then elected, Redburn being one of them, and he was also made secretary.   He and Case each took one share of stock.   In a few days after this the board met to close up the transaction.

The evidence shows beyond doubt that on this occasion Redburn, representing Case, said the company would not get the notes.   Mr. McClelland who was president and the largest stockholder objected, so that the project was about to be abandoned.   Redburn, however, stated that he had been mistaken, and that Carter would not let the notes go in as part of the sale by him; that the time was close at hand when the option contract expired, and that Case would lose his $500 unless the matter was closed up at once.   On these representations the directors finally concluded to take the land and unsold lots without the notes.   On the same day a deed of trust to Carter was executed, and the directors constituted Redburn an agent to close up the transaction with Carter.   Redburn and Case went to Carthage on the same day, and the deeds were duly delivered.   Redburn gave Carter checks for one-third of $32,000, one of which was for the sum of $2,500. Carter handed this check to Case in payment of the $500 held as a deposit and the extra $2,000 included in the consideration stated in the option contract.   Carter says he received this check and then gave it to Case because Case wanted to make it appear the land had been sold for $32,000.   Carter at the same time gave Case the notes representing lots sold, but it appears they only amounted to $2,060.

Case and Redburn then repaired to a hotel, when Case gave Redburn a paper transferring to Redburn a one-third interest in the notes. He also gave Redburn a check for $666.66. Case says he agreed to pay Redburn $1,000 to organize the company and complete the transaction, but at the hotel they agreed upon $666.66 and one-third of the notes as the compensation to Redburn.

A month or so after these transactions, McClelland became suspicious, and then asked Case if he got the notes from Carter, and Case said he did not. McClelland at once went to Carter and learned that Case did get the notes. It appeared for the first time, on the trial of this case, that Case received the $2,000, and the petition was then amended so as to include that demand against him.

A matter much controverted here and in the trial court is as to what relation Case and Redburn sustained towards the plaintiff corporation. The plaintiff insists that their relation to the company was one of confidence and trust, while the defendants say they were strangers and had a right to deal with the persons taking stock and the corporation at arms' length. This issue is one of importance in this case as it now stands, since this is a suit in equity, and the petition proceeds upon the plaintiff's theory just outlined.

Persons who take an active part in procuring subscriptions and in organizing a corporation or company, called promoters, occupy a position often difficult to define. When the owner of the property deals with these promoters, representing himself only and they the proposed corporation, it is very clear, he occupies no position of trust or agency. He may deal at arms' length, as in other cases, being liable, however, for his over-fraudulent conduct.

But it is common practice for persons who own property, or who have acquired the right to purchase property, to project and form a corporation and induce

others to become stockholders for the purpose of selling the property to the corporation at a profit.   There is no rule of law which prohibits such a transaction and there should be none; for the law encourages a free alienation and transfer of property, both real and personal; nor does the mere fact that a profit is made in such a transaction render the party receiving it liable to account therefor.   But the persons who thus project and form a corporation by soliciting and procuring others to subscribe for and take shares of stock, for the purpose of selling or turning over to the company property which they own or have a right to acquire by executory contract, do occupy a double position.   On the one hand they represent their own interest in respect of the disposition of the property.   On the other they represent the proposed corporation.   And persons who subscribe for stock have a right to do so upon the assumption that the promoters are using their knowledge, skill and ability for the benefit of the company.

It is, therefore, clear on principle that promoters, under the circumstances just stated, do occupy a position of trust and confidence; and it devolves upon them to make full disclosure.   Thus it was said in the case of *New Sombrero Phosphate Co. v. Erlanger*, L. R. 5 Ch. Div. 73–119: "A promoter is, according to my view of the case, in a fiduciary relation to the company which he promotes or causes to come into existence. If that promoter has a property to sell to the company, it is quite open to him to do so; but upon him, as upon any other person in a fiduciary position, it is incumbent to make full and fair disclosure of his interest and position with respect to the property. I can see no difference in this respect between a promoter and a trustee, steward or agent."

So it has been said in this country: The second principle is, that where persons form such an association, or begin or start the project of one, from that time

they do stand in a confidential relation to each other and to all others who may subsequently become members or subscribers, and it is not competent for any of them to purchase property for the purpose of such a company, and then sell it at an advance without a full disclosure of the facts.   They must account to the company for the profits, because it legitimately is theirs. *Densmore Oil Co. v. Densmore*, 64 Pa. St. 43–50. The position of trust and agency being once established the duty to make full disclosure, and the liability to account for profits made without such disclosure, follows, as has often been asserted—a proposition, not denied by counsel for defendants.   *Bent v. Priest*, 86 Mo. 475; *Landis v. Saxton*, 89 Mo. 375.

The point of most difficulty in this class of cases is as to the time when this fiduciary relation arises.   As to this it has been well said :   On the one hand it is quite plain that a fiduciary relation between a promoter and a company may exist long before the actual formation of a company by registration or otherwise.   On the other hand, it is obvious, that something must be done beyond a purchase and resale to constitute such relation—something must, it is submitted, be done by the promoter to impose upon him the duty of protecting the interests of those who ultimately form the company.   He assumes this duty if he assumes to act for them, or if he induces them to trust him, or to trust persons who are under his control, and who are practically himself in disguise ; he also assumes such duty if he calls the company into existence in order that it may buy what he has to sell ; but he does not assume such duty by negotiating with persons who have themselves assumed that duty, and who are in no way under his influence.   1 Lindley on Part. [4 Ed.] 584.

It remains to apply these principles to the case in hand.   It is to be observed in the first place that Redburn was the agent of Case.   We are also constrained to say that he was duly authorized by Case to make the

representations which he did make to persons taking stock and to the directors after the company had been organized. His acts and representations were the acts and representations of Case. Case had the undoubted right to make the option contract with Carter, and he was under no obligation to sell the property to any company. But it is a significant fact that he then contemplated the formation of a corporation and had the consideration for the property stated to be $32,000, while the true consideration was but $30,000. He thereafter by his agent assumed and took upon himself the duty of soliciting his neighbors to take stock and of bringing the proposed corporation into existence for the express purpose of taking the property from himself. From that moment Case occupied a position of trust and confidence to the subscribers and also to the proposed corporation, and it became his further duty to make full disclosures of profits which he intended to make in respect of the transfer of the property. This he did not do. On the contrary he made breach of that duty in that he represented the purchase price from Carter to be $32,000, when it was but $30,000; and in this that he said Carter would not let the notes go in under the option contract, when in point of fact the notes were to be and were thereafter turned over to him. It, therefore, follows from what has been said that the $2,000 and the notes belonged to the company, and the court was right in making the defendants account therefor.

It is argued that the directors finally consented to take the land and unsold lots at the price of $32,000; that they got all they contracted for, and the company has no just ground of complaint. They did so consent, but it was upon the representation that $32,000 was the true consideration paid Carter, and that the notes did not go to Case. For money and property acquired by Case under these untrue representations, occupying the position he did, he must account. What the company might have done had Case made full disclosure of his

profits we cannot say, nor is it material to inquire. The argument made by defendants on this question is as bad in law as it is in morals.

Redburn took his one-third interest in the notes with full knowledge of facts which made the notes the property of the company, and he, like Case, must account therefor.

It is insisted by the defendant that the court erred in allowing the plaintiff to amend the petition at the close of the evidence, so as to include the claim against Case for $2,000. The point of the objection is that the amendment should not have been made by way of inter-lineation. It is the settled and approved practice to make minor amendments by way of interlineation and erasure, such as adding or striking out the name of a party, correcting dates and obvious errors. But where as here new averments are made for the purpose of intro-ducing a new claim or demand, the pleading should be rewritten, and should set forth all the matter, leaving the abandoned pleading undefaced. In the present case several clauses were inserted, and the petition should have been rewritten. This is the rule of the code of civil procedure. R. S. 1879, secs. 3576 and 3577. But after all the question whether the particular amendment may be made by interlineation is one resting largely in the discretion of the trial court. The fact that the amendment was made in this case by interlineation, when it should have been by filing a new and com-plete petition, constitutes no ground for reversing the decree. The judgment is, therefore, affirmed. The other judges concur.