WIANO LAND & IMPROVEMENT COMPANY, Appellant, v. GEORGE B. WEBSTER, Appellant.

St. Louis Court of Appeals, May 10, 1898.

1. Corporation: OFFICER OF CORPORATION NOT ENTITLED TO PAY FOR SERVICES UNLESS BY AGREEMENT. As a general proposition an officer of a corporation is not entitled to pay for services rendered the corporation, in the absence of any agreement made with the board of directors to compensate him.

2. ———: RESOLUTION OF BOARD OF DIRECTORS. But where a resolution of a board of directors of a corporation clearly indicates a purpose on the part of the board of directors to pay its agent for his services, the corporation is bound by the agreement as expressed in the resolution.

3. Agent: TRUSTEE. Where a party purchases land for the signers to a syndicate agreement, and as their agent made cash payment with their money for said land, he, by taking the deed to himself becomes the trustee for their benefit, and holds the title to the land in trust for them, and can not speculate off of them in any manner.

4. Promoter: PROMOTER ACTING AS AGENT OF CORPORATION TO SELL IT HIS OWN PROPERTY. As a general proposition a promoter may deal at arm's length with a corporation and may sell it property at a profit, but he can not do this by concealing the truth when it is his duty to speak, nor speculate off of it by misrepresenting his connection with and interest in the thing about which he is proposing to deal with the corporation for the purpose of selling it his property.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

J. D. JOHNSON for plaintiff appellant.

The judgment against defendant on the first count of the petition was clearly right. South Joplin Land Co. v. Case, 104 Mo. 572–579; Bent v. Priest, 86 Mo. 475; Landis v. Saxton, 89 Mo. 375. This being an equity case, this court will review all the evidence, for the purpose of determining whether the finding or judgment of the trial court was right. Blount v. Spratt, 113 Mo. 48; Felton v. Gregory, 104 Mo. 488; In re Estate of Danforth, 66 Mo. App. 589. The defendant was not entitled to commissions for sales made by him. Pfeiffer v. Lansberg Brake Co., 44 Mo. App. 59; Besch v. Western Carriage Mfg. Co., 36 Mo. App. 333; Bennett v. St. Louis Car Roofing Co., 19 Mo. App. 349. But no valid agreement was ever made between the company and defendant for the payment to him of commissions for his services in selling the lots; and for that reason, he was not entitled to have compensation therefor. Pfeiffer v. Lansberg Brake Co., 44 Mo. App. 59; Besch v. Western Carriage Mfg. Co., 36 Mo. App. 333; Bennett v. St. Louis Car Roofing Co., 19 Mo. App. 349.

HENRY H. DENNISON for defendant appellant.

When a promoter sells to the corporation property which he purchased before becoming a promoter, the corporation can not claim the profits of his purchase. This is true, even though he fails to disclose his interest, and whether his purchase is absolute or conditional. Much more is it true when he makes no secret of the fact that the property is his own. Farrar v. Farrars Limited, 40 Ch. Div. 395, 409. A corporation can not keep the thing purchased, and at the same time recover of a promoter his profits. The contract must

either be confirmed or rescinded, and if the corporation has, by its own act, made rescission impossible, it has no remedy. Cape Breton Co., 26 Ch. Div. 224; R'y v. Magnay, 25 Beav. 598; Higgins v. Lansingh, 154 Ill. 301; Cape Breton Co., 29 Ch. Div. 803. If a person sells to a corporation, of which he was a promoter, property which he bought before he was a promoter, and makes no secret of the fact that the property is his own, he is neither liable to account to the corporation for his profits in the transaction, nor is he responsible in damages for any breach of fiduciary duty. Densmore Oil Co. v. Densmore, 64 Pa. St. 43; Lungren v. Pennell, 10 W. N. C. (Sup. Ct. Pa.) 297; M. Elhenney's Appeal, 61 Pa. St. 194.

BLAND, P. J.—The plaintiff by its amended petition stated in substance, that it was duly incorporated under the laws of this state April 22, 1893; that shortly prior to the incorporation of the company, the defendant falsely and fraudulently represented to W. A. Kelsoe and others (who afterward became the incorporators of the company), that a certain tract of land (described) situated in St. Louis county could be purchased for $5,500, and proposed to Kelsoe and others that they join in with him (defendant) and form a syndicate and later a corporation, for the purpose of purchasing, subdividing into lots and improving said tract of land, and resell it at a profit; that by means of said representations defendant induced Kelsoe and other parties to join in the scheme, which STATEMENT. resulted in the formation of the corporation and the purchase of the land at $5,500; that a short time prior to the making of these false representations the defendant had procured an option from the owners of the land to purchase the same at $4,750, and that he did purchase the same for that price, but to conceal

his fraud induced the grantors to express in the deed a consideration of $5,500; that in ignorance of this fraud and false representation and believing that the transaction was an honest one, they subscribed for stock in the corporation and paid their subscriptions over to the defendant for the purpose of purchasing the land at $5,500; that the defendant received these payments and pocketed $750, the difference between the actual amount for which the land was purchased by him and the amount for which he fraudulently represented the land could be purchased. A second count charged that the defendant had received $200 for lots sold of the tract, for which he had not accounted, and also that he had sold $310 in treasury stock of the corporation, for which he had not accounted to the corporation; each count prayed for an accounting and for judgment. The answer admitted that the plaintiff was a corporation; admitted that he had received $310 on account of sales of treasury stock; denied that he had converted it, but averred that he had paid out $317.75 for the use and benefit of the corporation and set out an itemized statement of the payments made by him, and asked judgment for $7.75, the excess of payments above receipts, and denied generally all other allegations of the petition. A trial was had and judgment was rendered on the first count of the petition for plaintiff for $750, and for the defendant on the answer for $7.75, to be offset from the $750 found due to the plaintiff. Both parties filed motions for new trial and in arrest, which being overruled both perfected their appeals to this court.

The evidence tends to prove that on April 5, 1893, the defendant secured an option from the owners of the tract of land good for twenty days, by which he agreed to pay $4,750 for the tract as follows: $200 was paid on the delivery of the option contract; $1,600 more

Land & Improvement Co. v. Webster.

was to be paid when deed was executed and within twenty days, and the balance was to be paid in two years, with six per cent interest per annum, the deferred payment to be secured by deed of trust on the premises. About April 25, 1893, defendant paid the balance of the $1,800 cash payment, received his deed, and executed his notes and deed of trust to the grantors for the balance of the purchase price of $4,750. At his request the consideration expressed in the deed to him was $5,500. On April 29 he executed a deed conveying the premises to the corporation for the consideration of $5,500, which was accepted by the board of directors of plaintiff corporation. A few days before the defendant procured his option to purchase the land at $4,750, he prepared what he called a syndicate agreement, by which it was proposed to form a company (to be incorporated) to purchase the tract of land at $5,500, to subdivide it into building lots, improve the property and sell off the lots at a large profit. With this written proposition in his hands he approached Kelsoe and the other signers, solicited and procured their subscription to the proposed corporation, took their money, and with it presumably made the cash payment called for by his option contract. On April 15, 1893, the subscribers to the syndicate agreement (including the defendant Webster) signed and acknowledged articles of incorporation and subsequently received a certificate of incorporation from the secretary of state. The deed from Webster to the corporation expressed a consideration of $6,000, but Webster stated at the trial that this was done for the purpose of making it appear that the issue of stock by the company ($6,000) was fully paid up; that $500 in stock was left in his hands and denominated treasury stock, and which he was authorized by the board of

EVIDENCE.

directors to sell, and that he had received $310 from sales of this treasury stock.

Webster & Company were authorized and appointed sole agents of the company to prepare the land for sale and to sell lots, by resolution of the board of directors. Webster testified that he had received $200 on account of sales of some of the lots, but he further testified that he had paid out more in commissions to his sub-agents for making sales than he had received. From his testimony it appears that he appointed as his sub-agent one Wells, who from time to time reported sales to Webster and made small payments of from $10 to $15 on each sale, the sales all being time sales with small cash payments. When Wells reported a sale, he paid the cash payment to Webster and received commission on the whole amount for which the sale had been made. It turned out that about all these sales were mere shams, as neither the purchasers nor any of their addresses could be found after the memorandum books of the sales came into the possession of of the corporation, and Wells had disappeared. It appears from Webster's testimony that he paid out the following necessary sums for the company:

April 25th, paid L. V. Stephens, state treasurer, incorporation fees $52.50

April 25th, paid notary and recording fees . . . . . . . . . . . . . . . . . . . . . . . . .    5.25

May 6th, paid for stock certificates, record book and corporation seal . . . . .    . . . . . . . . . . . .   .. . . . . . . . . .  . . . . . . . . . . . . . . . .   10.00

Paid St. Louis Trust Company for examination of title.. . . . . . . .   20.00

May 25th, paid Benton & Co. for printing . . . .  . . . . . . . . . . . . . . . .   17.75

May 29th, paid Benton & Co. for printing. . . . . . . . . . . . . . . . . . . . .   18.25

Paid R. E. Bellecourt for plat . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . .    5.00

June 6th, paid Russell commissions on sale of treasury stock . . . .   30.00

June 17th, paid Benton & Co. for printing . . . . . . . . . . . . . .  . . . . . . . .   10.50

June 24th, paid R. E. Johnson for surveying and platting . . . . . . . . .   75.00

Paid commissions on sales to Hermann ($900) . . . . . . . . . .  . . . . . . .   45.00

July 31st, paid commissions on sales to Redburn ($450) . . . . . . . . . .   22.50

Paid for transportation of various persons to visit and inspect property . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6.00

Total . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . .  . . . . . . . . . . .$317.75

Webster failed and refused to render any account of his transactions to the corporation, and on April 2, 1894, the plaintiff conveyed the land to one of its stockholders, J. M. Hart, and on the seventeenth of the same month brought this suit.

I. We think the weight of the evidence is with defendant that he expended more money for the benefit of the corporation as itemized in his off-set than he received for the treasury stock; and according to his testimony, which was not denied, he paid out more for commission for making sales (or pretended sales) than he received as purchase money on such sales: the plaintiff, however, contends that as he was a stockholder and an officer of the corporation (its president) he is not entitled to any compensation for his services for the sale of the lots. As a general proposition an officer of a corporation is not entitled to pay for services rendered the corporation, in the absence of any agreement made with the board of directors to compensate him. Remmers v. Seky, 70 Mo. App. 364; Pfeiffer v. Lansberg Brake Co, 44 Mo. App. 59; Besch v. St. Louis Carriage Mfg. Co., 19 Mo. App. 349. But the employment was not of defendant alone, but of Webster & Company, and while it appears that this real estate firm was composed of George B. Webster alone, yet the resolution we think clearly indicates a purpose on the part of the board of directors to pay its agent for his services, and we agree with the learned trial judge that the evidence fails to show that plaintiff is entitled to recover anything on the second count of its petition and that the defendant is entitled to recover $7.75 of his off-set.

*PAY of officer of corporation.*

II. We also agree with the finding of the trial judge on the first count of the petition. If, as the evidence indicates, the defendant purchased the land for

TRUSTEE. the signers to the syndicate agreement, and as their agent, and made the cash payment with their money, he, by taking the deed to himself, became a trustee for their benefit and held the title to the land in trust for them, and, of course, could not speculate off of them in the manner he did.

III. Should it be conceded that Webster procured the option for himself and before he approached the other parties with the syndicate agreement, and made the first payment out of his own funds, we yet hold that under the evidence even on this theory of the purchase his conduct toward and relations to the other parties were such that he can not keep the fruits of his bargain. As a general proposition a promoter may deal at arm's length with a corporation and may sell it property at a profit, but he can not do this by concealing the truth when it is his duty to speak, nor speculate off of it by misrepresenting his connection with and interest in the thing about which he is proposing to deal with the corporation, nor can he act as the agent of the corporation for the purpose of selling it his own property. The syndicate agreement prepared and presented by Webster, and to which he solicited signatures, begins with this sentence, "it is proposed to organize a syndicate for the purpose of procuring and subdividing a tract of about nine acres of ground;" from whom is not stated. Under the head of price is this clause, "the property can be purchased for $5,500." Webster is a signer to this agreement and subscriber. to the amount of $250. The other signers to the agreement testify in substance that Webster presented the agreement to them, stated that he was going to buy the land and put it in a syndicate, subdivide it and make a profit on it, and asked them to join him in the enterprise (the cost of the land, of its subdi-

CORPORATION: rights of promoter.

vision and improvement and an estimate of the sum for which the lots could be sold were all figured out and stated in detail on the face of the agreement); that with the understanding they were joining with him they signed the agreement and paid over the amount of their several subscriptions to him, so that he might go ahead with the project. In the light of these facts Webster assumed to act and was tacitly, if not expressly, authorized to act as the agent of the other parties; they relied upon his representations made, both orally and in writing, that he did not own the land but that he wanted it at $5,500 for the purposes stated in the written agreement.

By concealing the fact (if it be a fact) that he then held an option to buy the land at $4,750, he deceived and misled the other parties as to the price of the land. When the other parties at his solicitation and on his representations intrusted him with the several amounts of their subscription for the purpose of making the purchase, his relation to them was one of trust and confidence, and it was his duty to disclose all the facts about the price of the land. Bent v. Priest, 86 Mo. 475; Landis v. Saxon, 89 Mo. 375. Instead of doing this, he concealed the facts and profited by the concealment; his gain was acquired by subterfuge and deceit, and he should be made to account to the corporation (to the stockholders of which this profit money justly belongs). South Joplin Land Co. v. Case, 104 Mo. 572.

IV. The defendant claimed in his answer, and so testified, that the tract of land mentioned in the syndicate agreement is a different one from that actually conveyed. The tract is not described by metes and bounds in the syndicate agreement, but so far as it is described it tallies with the description given in the

defendant's deed, and the evidence of the defendant that it is a different tract is unsatisfactory and far from convincing on this point and the weight of the evidence seems to be against him; he at no time disclosed the fact to the corporation or to any of its stockholders that he was conveying or had conveyed a tract of land to the corporation different from the one he set out to acquire for it.

An examination of the evidence set out in the abstract satisfies us of the correctness of the judgment of the learned circuit judge, and we affirm that judgment. All concur.