HARVEY R. HITCHCOCK, LAWRENCE H. DEE, HARRY L. EVANS and CHARLES J. FISHEL, on be-half of themselves and all other stockholders in the Kamalo Sugar Company, Limited, v. FRANK HUSTACE, JOHN J. EGAN, FRANK H. FOSTER and THE KAMALO SUGAR COMPANY, LIMITED.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED APRIL 28, 1902.　　　　DECIDED MAY 31, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A promoter is the fiduciary of the corporation he brings into existence and of those whom he induces to buy its shares. It is his duty to make full and fair disclose of the facts to the shareholders or sub-scribers.

Where promoters organize a corporation for the purpose of selling
property or options they own, and make an agreement with them-
selves, as promoters or stockholders, for the company to buy their
property or options, at a profit, and do not disclose to the share-
holders or subscribers, other than themselves, the terms of said
agreement, such failure to disclose is a fraud and the agreement
void and the amount of the profit made by the promoters may be
recovered, in equity, at the suit of the stockholders, where the
proper officers of the corporation refuse to act.

OPINION OF THE COURT BY GALBRAITH, J.

The plaintiffs, dissatisfied stockholders in the Kamalo Sugar
Company, Limited, filed a bill in equity against the defendants
Hustace, Foster and Egan as promoters of said company to re-
cover for the corporation Thirty-five Thousand Dollars in cash
and Six Thousand shares of the capital stock of the company or
its value, One Hundred Twenty Thousand Dollars, taken by
them as *secret profits* or promoters' fees or compensation for
floating the plantation. A demand upon the corporation and its
officers to bring the suit and a refusal to do so is set out. The
other allegations of the bill and answers are given in detail in
another opinion rendered in this cause on another occasion (13
Haw. pp. 641 to 648 inclusive). It will not be necessary to re-
peat them here. Another chapter in the history of the case is
written, *ante* pp. 1, 2, 3, 4.

The principal evidence at the hearing was the testimony of
the defendants and the records made by them. The Circuit
Judge made few specific findings of fact. These are important
in the determination of this case, and we deem it advisable to
give a summary of the leading facts established by the evidence
before attempting to discuss or apply the principles of law in-
volved.

It was proved that Hustace, Egan and Foster were the pro-
moters of the Kamalo Sugar Company, Limited; that Foster held
certain options for deeds and leases of land on the Island of Molo-
kai considered desirable as the basis for forming a sugar planta-
tion; that he conferred with Hustace and Egan and the latter

bought a one-half interest in Foster's holdings on the third day of April, 1899; that upon said day the three defendants entered into a written contract which after reciting the purchase of the above interest and the consideration therefor paid, among other stipulations contains the following:    "That the purpose of the parties hereto in acquiring said lands, is the formation of a corporation under the laws of this country, to grow sugar cane thereon and to erect, maintain and operate sugar mills, and to that end, said parties of the second part," (Hustace and Egan) "shall at their own expense, within a reasonable time from date hereof duly organize such corporation with such capital stock and in other respects as the parties hereto," (Foster, Hustace and Egan) "may mutually agree.   That all of said lands so acquired shall upon the organization of said corporation be sold and conveyed to the same at such price as the parties hereto may mutually agree, and the difference between the price paid for said lands and the price for which the same shall be sold to said corporation shall be divided one-half thereof to said first party," (Foster) "and one-half to the said second parties" (Hustace and Egan).

It was also established that at this period in the history of the Territory there was active expansion in the sugar industry; that many new plantations were started; that there was much speculation in the stocks of these companies and that the public generally were eager to buy and did buy such stocks with the expectation of selling them at a profit; that the public including the plaintiffs, obtained information of the purpose of the defendants to promote a sugar company, from reports in the local newspapers (who gave out such information does not appear); that straightway these defendants were besieged and solicited by the plaintiffs, (except Dee) and others eager to buy stock in the promised company; that no prospectus was issued by the promoters nor were any subscription lists or stock books opened; that when application was made to one of the defendants for stock he would make a memorandum of the name and number of shares in a pass book or on slips of paper carried in the pocket; that before the corporation was organized these slips or lists of names

were handed into Hustace, who allotted the stock to the share-holders, determining who should be permitted to buy and the number of shares; that after Hustace had completed the allot-ment he caused a printed circular to be sent to each person to whom he had awarded stock in the form following:

"KAMALO SUGAR COMPANY.

Honolulu, April ...... 1899.

Mr. ....................

You are hereby notified that a ten per cent Assessment on .......... shares of stock, (par value $20.00 each) in the *Kamalo Sugar Company,* to be incorporated under the laws of the Republic of Hawaii, for the amount of 1,000,000 dollars, is now due and payable at my office, Campbell's Block, Merchant Street. If not paid on or before ............ inst., the same will be transferred to other parties.

Yours respectfully,

Frank Hustace.

$.......... due."

That afterwards, on the 20th day of April, 1899, the three defendants held a meeting at Hustace's office which was later denominated, in the minute books of the company, "the first stockholders' meeting of the Kamalo Sugar Company, Ltd.;" that these minutes after reciting that these three defendants were present, representing 48,800 shares of the capital stock out of the entire amount of 50,000 shares and that the articles of incorporation of the company had been filed, read as follows:

"Motion made by Frank Hustace and seconded by J. J. Egan that the corporation agrees to pay the promoters upon their giving a deed to the corporation of all their right, title and interest in the following described property: all options now in the name of Frank H. Foster, also in fee simple the Ahupuaa of Kopuaokolau containing 671 acres and one piece in Kapualai of three acres, more or less, as described in the deed to them from the McOorriston brothers, also the assignment of a certain lease for a term of forty years made by the trustees of the B. P. Bishop estate to the said promoters, together with all buildings,

improvements, rights, privileges and appurtenances therein, including all the stock formerly owned by McCorriston Brothers, viz., 300 head more or less of cattle, 20 head more or less of horses, for the consideration of Sixty Thousand Dollars, ($60,-000) in United States Gold Coin and the transfer to such parties as they may describe the amount of seven thousand shares of fully paid up stock of the corporation, carried." That these minutes make false recitals in at least three particulars; viz.: (1) The articles of incorporation of the Kamalo Sugar Company, Ltd., had not been filed on the 20th day of April, 1899. (2) The promoters did not at that time have a deed for the McCorriston land. (3) They had no lease for the Bishop Estate land. That on the day following April 21st, Hustace began to receive responses to the notices sent the allottees of stock and the payment of the first assessment of ten per centum thereon and that to the parties paying he issued receipts in the following forms:

"No. . . . . . . . . . .                    Kamalo Sugar Company, Ltd.
                              Subscriber's receipt.
                    Honolulu, H. I. . . . . . . . . . . . 1899.
    Received from . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . Dollars, for first assessment of ten per cent on . . . . . . . . . . shares of the capital stock of the Kamalo Sugar Company, Ltd., this receipt to be surrendered on the delivery of certificate of stock.

                                        Frank Hustace."

That the first certificates of stock in the company were issued in the latter part of May following; That the articles of incorporation appear to have been signed on the 20th day of April, 1899,—whether they were signed on that day or on the 4th day of May is disputed from the fact that in the date line of the articles an erasure appears. The month as typewritten was erased and "20th" and "April" written in with ink. When this change was made or by whom does not appear from the evidence. That the certificate of acknowledgment attached to the articles is dated May 4th, 1899, and the articles were filed with the Treasurer of the Territory on the 8th day of May, 1899. That the affidavit attached to the articles of incorporation recites that James F. Morgan is President, of the Kamalo Sugar Co., Ltd., J.

J. Egan, Secretary and Frank Hustace, Treasurer, and that the subscribers to the stock are

| | | |
|---|---:|---|
| James F. Morgan | 1,500 | shares |
| Frank Foster | 2,000 | " |
| J. J. Egan | 500 | " |
| A. C. Lovekin | 100 | " |
| Frank Hustace | 2,000 | " |
| Frank Hustace, Trustee | 43,900 | " |

and that ten per cent of the capital stock of one million dollars had been paid in and the entire amount subscribed for; that this affidavit was sworn to by the three officers named on the 4th day of May, 1899. How or when or by whom these parties were elected to the respective offices in the company does not appear from the minutes of the corporation or other evidence. That the defendants were given an opportunity to show, at the hearing, the amount of money expended in promoting the corporation; that the only proof given was by the defendant Foster, who showed an expenditure of $180.00; that some $70,000 was paid to Hustace in response to the notices sent the subscribers on the first ten per centum assessment to the stock awarded; that after this money was paid to Hustace these defendants in pursuance of the resolution of April 20th, appropriated $60,000 of this money and 7,000 shares of the paid up stock and from this amount they paid the McCorristons in consideration for their land $25,000 in cash and one thousand shares of paid up stock; that the remainder of the cash ($35,000) was divided among the defendants as follows: to Foster $15,000 cash and ½ of the stock and to Hustace $10,000 cash and ⅕ of stock and the same to Egan. That the promoters did not disclose to any of the allottees of stock either before or after the payment of the first assessment the amount they intended to take as promoters' fees and that none of the stockholders outside of the incorporators knew of the amount of the profit made by the promoters or anything on the subject; that the company issued a prospectus in September, 1899, publishing the transactions of the promoters; that on May 4th, 1899, when the affidavit accompanying the articles of incor-

poration was subscribed reciting that 10% of the capital stock had been paid in there had not been a dollar paid on the 43,900 held by Hustace as Trustee, except that paid by the plaintiffs and other subscribers.

The Circuit Judge found that the defendants Hustace, Egan and Foster "did unlawfully combine, conspire and confederate and agree together to cheat and defraud the stockholders of the Kamalo Sugar Company, Limited, an Hawaiian corporation, out of the sum of thirty-five thousand ($35,000) dollars in cash and six thousand (6,000) shares of the paid up stock of the said Kamalo Sugar Company, Limited, as alleged and charged in the plaintiffs' bill on file in this suit." The judge also found that the value of the shares was $20 at the time and that the conversion of the money and stock was fraudulent and void and ordered the money and stock, or its equivalent in cash, paid to the clerk of the court for the Kamalo Sugar Company, Limited. The judge also allowed the attorneys for the plaintiffs a fee of $20,000 for their services rendered in said cause. The defendants appealed. Numerous reasons are urged for reversal of the decree appealed from. It will not be necessary to notice all of these in detail.

Much stress is laid upon the fact that the time this company was organized was one of active expansion in the sugar industry; that speculation ran riot and prosperity in all of its delightful luxuriance was here; that the major part of the population of the islands were eager and anxious to buy sugar stocks; that the plaintiffs and others who bought shares in the Kamalo Sugar Company, Limited, did so without asking any questions and considered it a privilege to have shares allotted to them; that the transaction was all a gamble and when the excitement subsided the plaintiffs discovered that they had failed to realize on their exaggerated expectations and by this suit seek to avoid the responsibility of their own folly and to shift the burden of their losses to the defendants.

We are not much impressed with this argument. It finds as little support in morals as in law. It is no doubt true that at the

time in question there was much reckless speculation in corpora-
tion shares but it was not given out by the defendants and we
assume, in the absence of proof, that none of the plaintiffs had
any reason to believe or did believe that the Kamalo Sugar Com-
pany was organized as a lottery or a gambling enterprise. The
public who were invited to buy the shares of this company had
a right to presume that it was promoted as a legitimate enter-
prise in whose management business integrity, if not ability and
prudence, were to be important constituent elements. Counsel
have neglected to cite any authority supporting the assumption
that the character of a transaction, whether it is right or wrong,
honest or dishonest, lawful or unlawful, is to be determined by
the degree of prosperity existing in the community. We under-
stand that, in the law, right and wrong, fraud and theft, embez-
zlement and perjury are the same in sunshine and in rain, in
times of plenty and in famine and that the conduct of these
defendants must be measured by a fixed standard without refer-
ence to the degree of commercial activity at the time of their
operations.

The plaintiffs proceed upon the theory that the defendants
occupied a position of trust and confidence towards the company
and the public that was invited to buy and did buy the shares
and that the defendants could not take the money and stock
without first disclosing the facts to and obtaining the consent of
the stockholders; while the defendants insist that the plaintiffs
were not subscribers but purchasers of the stock from Hustace;
that the promoters were the original subscribers for the stock
and were strangers and had the right to deal with the plaintiffs
and all subsequent stockholders and the company at arm's
length. The determination of the relation occupied by the de-
fendants towards the company and the plaintiffs is the important
issue in this case and its determination, as is conceded by counsel,
will settle the other issues involved.

The rule settled by the English authorities is that in order to
make a complete contract to take shares there must be an appli-
cation for shares, an allotment of shares to the applicant and a

communication to him of the allotment. *Rogers Case*, L. R. 3 Ch. 637; *Pellot's Case*, L. R. 2 Ch. 527. If this rule were applied to the facts of this case we would be bound to hold that the offer of the plaintiffs to buy shares, and the allotment by Hustace and the notice sent prior to April 20th constituted a completed contract and each party receiving such notice was a subscriber from that date, at least if the notice was unconditional; if the notice was conditional the contract became complete on payment of the first assessment or earlier if the time of payment was waived or extended. This theory would explain why Hustace afterwards subscribed for stock as trustee and make that act consistent and show that he intended to subscribe and did subscribe for the stock as trustee for the several persons to whom he had allotted stock. The fact that he did not pay the first or any other assessment on any part of this 43,900 shares held as trustee tends strongly to support the theory that such was his intention and purpose at that time and negatives the claim now made that he was absolute owner of the stock and signed as trustee through inadvertence or on advice of counsel.

What relation in general does a promoter bear to the corporation he brings into existence and to the shareholders whom he induces to invest or who voluntarily invest in the stock of the company?

Cook on Stock and Stockholders, Sec. 651, says, "A promoter is considered in law as occupying a fiduciary relationship towards the corporation."

Judge Thompson says, "Although the promoters of a corporation are not its *agents* for the purpose of binding it by their acts and engagements, yet they are its *fiduciaries*; they occupy such a relation of trust and confidence towards the body which they are calling into existence,—or more properly speaking toward those whom they invite to join them in the intended enterprise by becoming members of such body,—as requires the same good faith on their part which the law exacts of the directors of corporations and all other fiduciaries. They are trustees in a sense which disables them from taking to themselves a *secret profit*

made out of their trust to the detriment of the future corporation or its members." Commentaries on Corporations, Vol. 7, Sec. 8286.

"Promoters stand in a fiduciary relation to that company which is their creature." *New Sombrero Phosphate Co. v. Erlanger*, 5 Ch. Div. 73, 112; L. R. 3 App. Cas. 1218.

"Whether called prospectors, promoters, agents, trustees, or any other name, they unquestionably solicit and accept trusts from the members of the company and therefore became its fiduciaries." 16 Am. Law. Rev. p. 672.

The law of this question as above quoted is too well established in the jurisprudence of this country and England to be now successfully controverted. Among the many American courts that have announced and followed this view are the United States Circuit Court and the Supreme Courts of California, Missouri, Pennsylvania, New York and Massachusetts." *Chandler v. Bacon*, 30 Fed. 538; *Burbanks v. Dennis*, 101 Cal. 96, 98; *Simons v. Vulcan Oil Co.*, 61 Pa. St. 202; *Brewster v. Hatch*, 122 N. Y. 349, 362; *The South Joplin Land Co. v. Case*, 104 Mo. 572, 579; *Haywood v. Lieson*, 176 Mass. 310. See also *Clark and Marshall, Private Corporations*, § 110 b.

The defendants admit that they were promoters of the Kamalo Sugar Company but insist that on April 20th they had ceased to be promoters and had become and then acted as stockholders and as such had a right to make the agreement with the promoters for the payment of the money and stock in consideration for the options.

This position is not tenable. These defendants did not cease to be promoters, at least until the corporation, the artificial person, was brought into life. The Kamalo Sugar Company, Limited, was not a corporation until after the articles of incorporation were filed with the Treasurer of the Territory, May 8th, 1899. (C. L. Sec. 2033.) This filing of the articles was the last act necessary to breathe the breath of life into this soulless child of their will. Whether or not the corporate existence reverts back to the signing of the articles, it is not necessary to deter-

16-D

mine, since it is clear that the defendants could not, at that time and under the facts of this case, by making a contract with themselves divest themselves of the fiduciary relations assumed as promoters.

What duties were imposed on the defendants by the relation they assumed and occupied towards the plaintiffs and the other stockholders and the company? The law is well established that if a trustee, agent or promoter propose to contract with any person with whom he stands in a relation of trust and confidence, the utmost good faith is required. "It is not enough that they do not affirmatively misrepresent; *they must not conceal; they must speak and speak fully to every material fact known to them*, or the contract will not be allowed to stand." Perry on Trusts, Sec. 178.

"Where persons undertake the promotion of a company for the purpose of purchasing certain existing property, under an agreement with the owner and proposed vendor of such property, by which they receive a certain compensation for promoting the company, they are bound to disclose to those whom they induce to become members of the company, what their compensation is to be. The concealment of such an agreement is a fraud on the company. It amounts to an agreement, by the vendor, with an agent of an intended purchaser, to give him a bribe to betray the interest of his principal. If the promoters of a company conceal such an agreement from those whom they induce to join it, and the company proves abortive, they will not be allowed, in the winding up of the company, compensation for their services, either upon or after the formation of the company." Thompson's Commentaries on the Law of Corporations, Sec. 456.

Again in the following section the same distinguished author says: "Persons who purchase property and then organize a company to purchase it from them, stand in a fiduciary position towards such company, and must faithfully state to the company all material facts relating to the property, which would influence the company in deciding on the desirability of purchasing. In such cases the owners of property who desire to create a company for the purpose of purchasing it from them are bound, if they

wish to make a contract which will stand, to nominate independent directors, and disclose to them the actual facts. The principle upon which courts of equity proceed in these cases is a very familiar one. The promoters of a company, like its directors, is deemed to sustain towards the members of the company the relation of a trustee towards his *cestui que trust.* This being so, he will not be permitted to speculate out of that relation, or to derive secret advantage from it. He is bound to disclose to them fully all material facts touching his relation to them, including the amount which he is to get for his services as promoter, usually called 'promotion money'." Sec. 457.

"Where the vendor becomes a promoter, he is concerned in the sale of the property as vendor; and being a promoter, he is concerned in its purchase as the agent of his company. He acts in a dual capacity. His duties are twofold and conflicting. As vendor he owes it to himself to sell as high, and as promoter he owes it to the company to buy as low, as possible. His performance of those duties is frequently attended with disgraceful perfidy. He is true to himself in securing the highest price for the property but is false to his company by deceiving it as to the worth of its intended purchase, and by lulling its shareholders into unsuspicious reliance that their interests will be looked after and guarded either by himself or by corporate officials, whom he has either already corrupted or intends to circumvent or seduce." * * * "Cases in which the vendor is a promoter and sells to the company at a large undisclosed profit, * * * are the cases in which the doctrine that promoters are corporate fiduciaries is applied oftenest and with the most vigor and effect." 16 Am. L. Rev. p. 673.

The doctrine of the above authorities ought to be recognized as settled law. Its application to varying states of facts, resembling in some instances those of this case is illustrated in the following cases:

*McKay's Case,* 2 Ch. D. 1; *Bagnall v. Carlton,* 6 Ch. D. 371; *Emma Silver Mining Co. v. Grant,* 11 Ch. D. 918; *Emma Silver Mining Co. v. Lewis,* 4 C. P. D. 396; *Archer's Case,* 1 Ch. 322; *Yale Gas Store Co. v. Wilcox,* 64 Conn. 101; *Plaquemines Tropical Fruit Co. v. Buck,* 52 N. J. E. 219; *Woodbury*

*Heights Land Co. v. Londenslager*, 55 N. J. E. 78; *Chandler v. Bacon*, 30 F. 583; *Emery v. Parrott*, 107 Mass. 95; *Densmore Oil Co. v. Densmore*, 64 Pa. St. 43; *Bosher v. Richmond and Harrisburg Land Co.*, 89 Va. 455, 460, 461; *Pittsburg Mining Co. v. Spooner*, 74 Wis. 307; *Burbank v. Dennis*, 101 Cal. 90, 98; *South Joplin Land Co. v. Case*, 104 Mo. 572; *Hayward v. Leeson*, 176 Mass. 310, 326.

Applying the principles established by the authorities to the facts of this case the conclusion is inevitable that the defendants were fiduciaries of the plaintiffs and the Kamalo Sugar Company, Limited; that the duties imposed upon them as such fiduciaries was not discharged by a failure to issue a prospectus and by not misrepresenting the facts; that they were bound under the law to disclose fully and completely the facts; that Frank Hustace, J. J. Egan and Frank H. Foster, could not make a valid agreement with the Kamalo Sugar Company, Limited, at the time acting in the dual capacity for the promoters and the company, whereby they as promoters were given a profit of $35,000 in cash and six thousand shares of paid up stock, without disclosing the facts to those interested other than themselves, and obtaining their consent thereto; that the failure to disclose the facts was a fraud, whether actual or constructive we need not say, on the plaintiffs and the company and the agreement cannot stand; that in view of this fraud the defendants were not entitled to compensation for their services and the plaintiffs are entitled to recover as decreed.

There may be some doubt whether or not Foster was entitled to credit for $180.00 for cash paid out but the plaintiffs did not appeal from this and are not objecting to it. If this was error it was one of which the defendants have no right to complain.

The allowance of fees to the plaintiff's counsel seems out of proportion to the services rendered. The majority of the court are of the opinion that under all the facts of the case the fee should be reduced to $7,500. Personally I think that it should be fixed at $10,000.

The decree appealed from is affirmed, except the allowance of counsel fees is reduced from $20,000 to $7,500.

*Geo. A. Davis, T. McCants Stewart, F. M. Hatch, B. L. Marx, J. A. Magoon, T. I. Dillon* and *J. Lightfoot* for plaintiffs.

*Robertson & Wilder, Kinney, Ballou & McClanahan* and *F. W. Hankey* for defendants.