### DUPEE v. CHICAGO HORSE SHOE CO.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 804.

1. CORPORATIONS—STOCK SUBSCRIPTIONS — SIGNING ARTICLES OF ASSOCIATION—INTENT.

A signature to the articles of association of a projected corporation, followed by the words "250 shares," is a sufficient subscription to that number of shares of stock, provided the subscriber intended that it should so operate.

2. SECONDARY EVIDENCE—SEARCH FOR LOST ORIGINAL—SUFFICIENCY OF SHOWING.

Proof of search for a lost subscription paper to corporate stock, which is otherwise sufficient to let in secondary evidence, is not impaired by the testimony of the corporation's attorney, into whose hands the original first passed, that he believed it was forwarded to the general manager, followed by the general manager's testimony denying that the paper had ever been given to him.

3. SAME.

Nor was it impaired by the testimony of the president, elicited on cross-examination, that he had seen the paper in the hands of a former secretary of the corporation, though such secretary was not summoned or called as a witness, it appearing that his whereabouts at the time of trial was unknown.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The suit in the Circuit Court was by defendant in error, a citizen of the State of Indiana, incorporated under the laws of that State, against the plaintiff in error, a citizen of the State of Illinois, to recover twenty-five thousand dollars upon plaintiff in error's subscription to the capital stock of the defendant in error.

The declaration, original and amended, set forth two papers as constituting the subscription upon which liability was based. The first of these papers embodied in the original declaration is in the terms following:

"Articles of Association of Chicago Horse Shoe Company.

"We, the undersigned, hereby associate ourselves together pursuant to the Statutes of the State of Indiana for the organization of corporations, by the following written articles:

"Article I.—Name. The name shall be Chicago Horse Shoe.

"Article II.—Capital Stock. The capital stock of this Association shall be one hundred thousand dollars ($100,000.00) divided into one thousand (1,000) shares of one hundred dollars ($100) each.

"Article III.—Object. The object of this Association shall be to purchase, manufacture and sell any and all objects in the construction of which iron, steel, copper, brass, or other metals are required, including horse shoes, and to purchase, lease or otherwise acquire such real or personal property as may be necessary to a successful prosecution of said business.

"Article IV.—Place of Operation. The business of this Association shall be carried on in East Chicago, Lake County, Indiana.

---

¶ 1. See Corporations, vol. 12, Cent. Dig. §§ 197, 201.

"Article V.—Number of Directors and Directors for First Year. There shall be five (5) directors for this Association. The following directors shall manage the affairs and prudential concerns of this Association for the first year of its existence: Shedd S. Shields, John D. Hibbard, Horace N. Dupee, George F. Hughson and Christopher Pfeiffer.

"Article VI.—Terms of Existence. The Association shall have an existence of fifty (50) years from the date hereof.

"In Witness Whereof we have hereunto set our hands and seals this eighth day of August, A. D. 1896.

"John D. Hibbard,     (Seal)   500 Shares.
   75 Michigan St.,
     Chicago, Ills.
"Horace M. Dupee,    (Seal)   250 Shares.
   4824 Woodlawn Ave.,
     Chicago, Ills.
"Geo. F. Hughson,    (Seal)   250 Shares.
   75 Michigan St.,
     Chicago, Ills."

To this declaration the defendant below pleaded, among other things, that while consenting to assist in the incorporation of said company he had refused to become a stockholder therein; that he did not subscribe, or intend to subscribe, in putting his name to such articles of corporation, to the capital stock of such corporation; that the words "250 Shares" added after his signature were not intended or understood to be a subscription for stock, but were added, as he was advised at the time and as he believed, as being necessary for the purpose of incorporating such company; that it was understood that he was to act as director of said company only until the stock was subscribed for and sold; and that said articles of incorporation have never been treated as a subscription for stock; nor did any person buy stock in said corporation, or give said corporation credit on the faith thereof. Other facts are set up in the pleas tending to show the improbability of plaintiff in error intending his signature to the articles of incorporation, as a subscription paper.

It is admitted that this paper was signed by the plaintiff in error and that, with his own hand, he wrote in, following his signature, the words "250 Shares." Little other evidence was introduced at the trial upon the issue of fact thus raised. Upon this issue the court instructed the jury as follows: "Now, gentlemen, leaving out all consideration of another paper which has been testified to as being an actual subscription upon that transaction, if you are satisfied from the preponderance of the testimony in this case that he (plaintiff in error) wrote over his name '250 Shares' with the understanding that that meant that he agreed to take 250 shares in this company which was then being organized, that made him a subscriber; that constitutes a subscription and was binding upon him; it was equivalent to saying, 'I will pay $25,000 for the 250 shares', because the articles named the price of the shares, that they shall be of the value of $100 each. So, if the writing was put there with an understanding on his part that he was then agreeing with the other subscribers that I will take 250 shares, that was a subscription."

At the request of the plaintiff in error, the court further charged: "You are instructed, gentlemen, that there being no express agreement in the articles of incorporation that the signers thereto should take or agree to take stock in the same, the signatures of the same having a certain number of shares after their signatures, are subject to explanation by parol evidence, and if it should be shown that such words added to their names were not intended or understood as a subscription to stock, the defendant is not liable. You are further instructed that the plaintiff in this case sues upon a written article of incorporation and a written subscription alleged to be signed by the defendant, Horace M. Dupee, by which he agreed to take 250 shares of stock of the par value of $100 each and to entitle the plaintiff to recover it must be established by a preponderance of the evidence that the said defendant did sign the subscription agreement, as alleged in the declaration, or that it was agreed and understood by said Dupee and the other stockholders that his signature to the articles of incorporation was intended to be and was a subscription for 250 shares in the plaintiff corporation. The articles of incorpora-

tion containing no agreement that the subscribers were to take the stock, the articles of incorporation and signature of said Dupee do not of themselves constitute sufficient evidence to entitle the plaintiff to recover."

Adding, at the request of the defendant in error, the further charge:

"On the other hand, gentlemen, you are instructed that the Chicago Horse Shoe Company, the plaintiff, was legally incorporated under the laws of the State of Indiana and that if the defendant when he signed the articles of association of the plaintiff and placed opposite his name the words '250 Shares' intended thereby to subscribe for 250 shares of the capital stock of the plaintiff, your verdict must be for the plaintiff. For the purpose of arriving at the intent of the defendant, you may consider the fact admitted by him of writing the 250 shares over his name and the further fact of his subsequently participating at a stockholders' meeting of the company, as well as being elected a director and the treasurer of the company. Under the laws of Indiana no one has a right to serve as a director unless he is a stockholder."

To each of these instructions exceptions were reserved.

The second paper on which liability for subscription is based, embodied in the amended declaration, is as follows:

"Chicago, Illinois, August 8, 1896.

"We, the undersigned, hereby subscribe for the number of shares of capital stock of the Chicago Horse Shoe Company (a corporation to be organized under the laws of the State of Indiana), set opposite our respective names, and agree to pay for each share the sum of $100 upon the demand of the board of directors of said company when organized."

To this the defendant below pleaded the general issue, nul tiel corporation, and three special pleas, setting forth the facts of the incorporation of the company, as above stated.

The original of this paper, if it ever existed, was not put in evidence and the copy does not bear the signature of the plaintiff in error.

There was evidence tending to show that a separate subscription paper, such as is set forth, was signed by the plaintiff in error in the presence of the legal adviser of the corporation, who took it into his possession; that the original had passed out of his possession; that search through his office failed to find it; but that the copy put in evidence was a carbon copy of the original made at the time.

The counsel thus testifying did not know what had become of, or to whom he had given, the original, but believed it had gone to one Caleb about January 13, 1897, along with the articles of association and the certificates of the Secretary of State, for which last named paper he held Caleb's receipt of that date.

The treasurer of the defendant in error, who, at the time of the trial and since 1897 had custody of the papers, records and books thereof, gave testimony tending to show that he had made diligent search for the supposed original subscription agreement, but that the same was not among the papers in his hands.

It transpired on the trial that one Shields was secretary of the company at the time of its organization and, upon cross-examination at the trial, the president of the company stated that he had seen the papers in Shields' hands; but Shields, at the time of the trial, being no longer secretary and his whereabouts being unknown, was not either summoned or called as a witness; and his evidence either as to making a search or as to the possession of the original paper was not obtained.

Caleb, the general manager, to whom the attorney thought he had given the subscription paper, denied that the paper had ever been given to him.

Upon this state of the proof the carbon copy was admitted with the following instructions to the jury: "You are instructed, gentlemen, that should you find from the evidence that the defendant, Dupee, signed the subscription agreement testified to by the witness Vincent, then in such case you must find for the plaintiff in the sum of $25,000 with 6 % interest thereon from the 3rd day of April, 1899. In such case all the evidence introduced which touches the question as to whether the defendant Dupee intended to subscribe for said stock or not is irrelevant and should not be considered," to which exception was taken by the plaintiff in error.

The jury having returned a general verdict in favor of the defendant in error for the sum of $27,741.65, and a motion for a new trial having been overruled, judgment upon the verdict was entered, from which judgment this writ is prosecuted.

John S. Miller, for plaintiff in error.

W. S. Oppenheim, for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges.

GROSSCUP, Circuit Judge, after the foregoing statement, delivered the opinion of the court.

The verdict being general, it is not apparent on the record upon which alleged subscription the finding of the jury was predicated. Error, therefore, in respect to the trial of either of the issues thus presented, would be fatal to the judgment of the Circuit Court. We are of the opinion, however, that there was no such error.

There is nothing in the statute of Indiana (1 Horner's Rev. St. §§ 3851–3869) which calls for or contemplates that subscriptions to the stock of a company about to be incorporated shall be embodied in the certificate of incorporation; nor is there anything in the statute forbidding the embedding of a subscription in the articles of incorporation. The liability of the defendant in error, in that respect, therefore, is to be governed, not by any Indiana statute, but by the general rule relating to such contracts.

The general rule is that in contracts of this character, as in others, the paper submitted to the court and jury is to be interpreted according to its intent. No particular formality is requisite. A signature to the articles of incorporation required by statute, with the number of shares placed opposite to the signature, may be a sufficient subscription to bind both the corporation and the subscriber. The real question is, Was such paper intended and accepted as a subscription? Cook, Stock & S. (3d Ed.) § 52; Nulton v. Clayton, 54 Iowa, 425, 6 N. W. 685, 37 Am. Rep. 213; Warehousing Co. v. Badger, 67 N. Y. 294. In the case last cited, the subscription was contained in the certificate of incorporation and was embodied wholly in the words "250 Shares" placed opposite to the party's signature. It was held to be sufficient in form and substance and to take effect simultaneously with the filing of the certificate.

In this view of the law the issue made upon the original declaration was properly submitted to the jury. The instructions submitted to the jurors the question, Whether the plaintiff in error intended thereby to subscribe for the stock; and there is no reason why the verdict of the jury upon such submission should be disturbed.

Upon the issue raised by the second paper, it is insisted, principally, that the court erred in admitting secondary evidence of the contents of the original subscription, there being no sufficient proof of the loss or destruction of the original.

In this contention we cannot concur. There was evidence sufficient to go to the jury, tending to show the execution of the original, and there was evidence of sufficient search through both the papers of the company in the custody of the treasurer and the papers of the attorney into whose possession it had originally come. The proof

of search would, unquestionably, be regarded as sufficient, were it not for two items of evidence cropping out on the trial, viz: (1) that in the attorney's opinion the paper had been transferred to the general manager, and the general manager's denial of having ever received it; and (2) the statement of the president that he had seen the papers in the hands of the former secretary, such former secretary not being called as a witness.

The first of these occurrences is clearly of no force. The attorney did not testify that the paper was turned over to the general manager. Such was his guess or opinion only. The expression of such guess, followed by the denial of the general manager, can have no effect upon the competency of the other testimony, or upon the adequacy of the search, except as it may affect the credibility or accuracy of the attorney's testimony.

Nor is the second of the occurrences fatal to the verdict. The papers of a corporation are presumably in the possession of the officer presently charged with their custody. But, had it been known that this particular paper was not to be found, though it had once been in the possession of Shields, a former custodian, and were Shields within reach of the parties, it might very reasonably have been incumbent upon the defendant in error, before introducing the secondary evidence, to have exhausted Shields' memory of the whereabouts of the original and required him to make such search as would have satisfied the court that it was no longer in his possession. But Shields' possession of the paper was only disclosed on the trial and in a cross examination. The witness was not then within the reach of the court, and his whereabouts was not known. Under such circumstances there was no duty to arrest the progress of the trial until the testimony of Shields could be procured. The incident is one of those that occur frequently in trials and must be dealt with only according to the exigencies of the situation. We see in neither of these occurrences any substantial reason why the secondary evidence should not have been admitted and the whole question, as one of fact, submitted to the jury, as it was.

Other exceptions, relating to the admissibility of the resolution of the board of directors of October 30, 1898, and the record of the minutes of the stockholders' meeting of September 28, 1899, have been brought to our attention, but may be disposed of with the statement that, in our judgment, there was in those respects no error.

The judgment will be affirmed.