[Civ. No. 4277.  Second Appellate District, Division Two.—May 13, 1927.]

## D. K. JOHNSON, Respondent, v. BEN HULSE et al., Appellants.

[1] CORPORATIONS — ABANDONMENT OF PROJECTED CORPORATION — SUB-SCRIPTIONS—MONEY PAID TO AGENT OF PROMOTERS—LIABILITY OF PROMOTERS.—Money paid to an agent of promoters of a projected corporation is as if paid to the promoters themselves, and in so far as the promoters or their agents received money from subscribers for shares in the projected corporate enterprise which was afterward abandoned, they are jointly and severally liable for the return of money paid on a consideration which has failed.

[2] ID.—ACTION BY SUBSCRIBERS TO RECOVER MONEY PAID ON SUB-SCRIPTIONS—ABANDONMENT OF CORPORATE ENTERPRISE—RECEIPT OF SUBSCRIPTION MONEY BY AGENT—LIABILITY OF PROMOTERS—EVI-DENCE.—In an action to recover money paid on subscriptions for stock in a projected corporation, certain of the defendants were liable for the return of the money of the subscribers, where the projected corporation was abandoned, and such defendants were promoters of the enterprise, and the person to whom the money was paid was selected as the agent of the promoters and was by them set at work to procure subscriptions and collect money from the subscribers; and whether or not the money collected on the subscriptions was actually transmitted by said agent to one of the promoters did not affect the liability of the promoters for the return of the money.

[3] ID. — LIABILITY OF CERTAIN DEFENDANT — CONTRACTS — FINDING — EVIDENCE.—In such action, the evidence did not justify the finding that there was a contract between another of the defendants and either plaintiff or his assignor, where it showed that such defendant had no interest in the property to be turned over to the projected corporation and had had nothing to do with ar-ranging the plan of operation or setting the agent at the work of procuring subscriptions.

[4] ID.—STATEMENTS OF AGENT OF PROMOTERS—EVIDENCE.—In such action, the testimony of a witness, while not competent under the issues of the case, was without prejudice to the defendants, where such witness, who had been a subscriber under an original partner-

---

1.  Rights and liabilities of promoters, note, 17 **Am. St. Rep.** 161. Liability of incorporators for funds subscribed to organize a corpo-ration where the incorporation was never completed, note, 16 **L. R. A. (N. S.)** 348.  See, also, 7 **R. C. L.** 86.

ship scheme subsequently abandoned, testified to certain statements then made to him by the agent of the promoters of the projected corporation.

[5] ID.—LEASE—EVIDENCE.—In such action, there was no error in admitting testimony of one of the defendants in response to a question as to whether he and his co-defendants had ever secured a certain lease which was not referred to in a preorganization agreement, where there was some evidence that if the corporation should be organized, one of the promoters intended to transfer that lease to the corporation.

[6] ID.—AGENCY—EVIDENCE.—In such action, there was no error in allowing one of the defendants to answer a question as to whether he ever sought "to set aside any fact which might be stated" in a certain newspaper advertisement published by the agent of the promoters, a portion of which was read to the witness, where the question was asked in an endeavor to elicit additional proof of the agency.

[7] ID.—JUDGMENTS—CHARACTER OF PROMOTERS' LIABILITY.—In such action, certain of the defendants who were promoters of the projected corporation cannot complain because there was no judgment against a co-defendant, since the liability of the promoters is a joint and several liability.

(1) 14 C. J., p. 276, n. 10.   (2) 14 C. J., p. 276, n. 12.   (4) 4 C. J., p. 970, n. 57.   (5) 14 C. J., p. 276, n. 10.   (6) 40 Cyc., p. 2481, n. 64.   (7) 4 C. J., p. 698, n. 19.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

M. C. Atchison and Leslie Reed for Appellants.

J. Stewart Ross and R. B. Whitelaw for Respondent.

JOHNSON, J., *pro tem.*—This is an appeal by defendants Hulse, Abbott, and Little from a judgment rendered against them in favor of plaintiff. The legal question involved is that of the obligation of promoters of a projected corporation to repay, upon an abandonment of the scheme, money received from subscribers for shares to be issued upon organization of the corporation. We have not had the benefit

of any brief from respondent, and must, therefore, deal with the points advanced by the appellants in our own way.

The complaint is in three counts, the first to recover on a subscription made by plaintiff himself; the second on a subscription made by D. L. Zinn, who assigned his claim to plaintiff; the third on a subscription made by P. P. Stavron, whose claim was likewise assigned to plaintiff. Only part of Zinn's subscription having been paid in money, and that having been returned to him, the trial court found in favor of the defendants on the second count, and therefore no further reference will be made thereto.

The facts in the case are simple. The defendants Hulse, Abbott, and Dye had been interested together in certain oil ventures, and in February, 1919, Hulse secured certain options for oil leases in Texas, in which he associated with himself Abbott and Dye. All three lived in California, but during the period involved in the transactions in question Hulse and Dye spent most of their time in Texas. After the options had been acquired, an arrangement was made by Hulse and his two associates with Martin C. Brumbly with a view to raising money in California for prospecting work on the Texas lands. The first plan was to have Brumbly raise not less than $40,000, in exchange for which there was to be transferred to him an interest in the options. The method first tried for providing funds through Brumbly was that of uniting subscribers in a copartnership divided into "units," for which each member was to pay $500. Certain subscriptions under this plan were obtained by Brumbly, the proposed partnership being designated as Imperial Valley-Texas Oil and Gas Association. A question having arisen, however, as to the legality of this procedure in view of the Corporate Securities Act [Stats. 1917, p. 673], the use of the instrumentality of a copartnership was abandoned, and in its stead a scheme was devised for taking subscriptions for shares in a corporation to be thereafter formed. Pursuant to this plan an instrument called "Preincorporation Agreement" was prepared. It is dated May 1, 1919, and is an agreement by which the subscribers agree to form a corporation, to be known as "Big Four Oil Association," with an authorized capital of $200,000, divided into shares of a par value of $500 each, for the purpose, among other things, of prospecting and drilling upon certain de-

scribed lands in Texas, called the Merkel lease and the Petrolia lease, as well as any other lands that might be acquired. The agreement provided for five trustees to act without compensation pending the organization of the corporation, and named as trustees Abbott, Hulse, Dye, Little, and Brumbly. It authorized the appointment of a general manager, fixed his duties, gave the trustees power to buy and sell oil leases and take title in their names; also to take subscriptions and receive payments; and stated that the two leases named had been transferred to the trustees in consideration of a subscription of $60,000. It further stated that the trustees were authorized to accept subscriptions for $140,000, and that of such sum no part was to be expended until at least $25,000 had been subscribed, which sum it was estimated would be more than sufficient for drilling the first well. The only persons who ever signed this particular instrument were Abbott, Little, and Brumbly; and neither the leases named nor any assets were ever transferred to any of the trustees to be held for the benefit of the proposed corporation. Abbott testified that the agreement was not to be effective "until after the deal had been completed," and that was why Hulse and Dye did not sign. Dye testified that he and Hulse did not sign because Brumbly had not done his part.

After this preincorporation agreement had been prepared, Brumbly obtained from plaintiff and his assignors the subscriptions giving rise to this action. Johnson and Stavron subscribed each for a half unit, and each paid Brumbly therefor the sum of $250. Brumbly testified that the total subscriptions obtained aggregated between $14,000 and $17,000; that an unspecified part of the money he received was retained by him for commissions, and the rest he transmitted to Abbott. Whatever money Abbott received from Brumbly was deposited by him in a bank at Calexico, in an account carried in the name of the Big Four Oil Association, Abbott signing checks as trustee. Brumbly having failed to raise sufficient money within the time necessary to fulfill the requirements of the options, Hulse directed the abandonment of the enterprise and the return of the money received from the subscribers. None of the money paid by the plaintiff Johnson or his assignor Stavron had been paid over to Abbott by Brumbly; and the demands of Johnson and Stavron for re-

payment were, therefore, refused by Abbott, with the result
that this action was instituted for recovery of the amounts
claimed.

In taking subscriptions from subscribers Brumbly used
an application blank with which he had been provided, and
which was in the following form: "I . . . hereby make this
application which is to be attached and become a part of the
original preorganization agreement of the Big 4 Oil Associa-
tion for . . . units in the association, at $500 per whole
unit; it is understood and agreed that I am to receive a cer-
tificate for my investment when the Association is incor-
porated." The receipts given were signed either by M. G.
Brumbly, trustee, or simply M. G. Brumbly. Plaintiff and
Stavron testified that when they subscribed they were told
by Brumbly that if the corporation should not be formed,
their money would be returned; but even if such promise
had not been expressly made, it would have been implied by
law.

The complaint alleges that the defendants Hulse, Dye,
Abbott, and Little, and one fictitiously named as John Doe,
were operating under the name of Big Four Oil Association,
and that plaintiff and his assignors had paid them the
amounts sued for, in return for which defendants agreed to
organize the corporation and to issue certificates of stock;
or in the event that the corporation was not organized, to
return to the subscribers the amounts paid. The action was
later dismissed as to the fictitious defendant, John Doe.
Defendant Little answered separately and the defendants
Hulse, Abbott, and Dye jointly; but the answers are all in
the same general form. All the defendants denied any con-
tract with plaintiff or his assignors; and while admitting
that none of the defendants had incorporated the company
referred to, they denied that any agreement for that pur-
pose was made, and denied also that they received any
money from plaintiff or his assignors. The court found in
favor of plaintiff on the first and third counts, but only
against the defendants Hulse, Abbott, and Little, giving
judgment against them for $500 and interest. The appel-
lants contend that the court erred in denying the motions
of defendants for a nonsuit and in admitting certain evi-
dence to which they objected; and erred also in finding that
there was a contract between any of the defendants and

either plaintiff or his assignor Stavron. Error is alleged further in the failure of the court to make Dye share the burden of the judgment with the other defendants charged.

As we read the record, the liability to plaintiff and his assignors was not created by the preorganization agreement. That is not an agreement of promoters, as such; nor did the defendants treat it as anything more than a statement of a tentative plan, without binding force on the holders of the options until the requisite amount of money had been raised through subscriptions. It was designed to be an agreement between those who became subscribers for shares, and contemplated a temporary operating arrangement in the interests of the subscribers during the preparatory period preceding the actual incorporation of the proposed company. The real promoters were the coadventurers who devised the scheme and set Brumbly at work to raise enough money to carry their plan into execution. [1] Money paid to an agent of the promoters is as if paid to the promoters themselves; and in so far as the promoters or their agents received money from subscribers for shares in the projected corporate enterprise which was afterward abandoned, they are jointly and severally liable for the return of money paid on a consideration which has failed. The rule is thus expressed in section 162 of Alger on the Law of Promoters and the Promotion of Corporations: ''When a subscriber for shares in a projected corporation has paid money thereon in advance to the promoters, and the scheme proves abortive, he may recover back his money. This right rests on the failure of the consideration on which the money was paid. But the scheme is not to be deemed abortive until the formation of the corporation has been abandoned or has become impracticable, or a reasonable time for the formation has elapsed. It is reasonable, in the absence of agreement to the contrary, that the expense of exploiting the proposed undertaking should, in case it collapses, fall upon the original projectors, and not on those who advanced their money on the faith of the ability of the projectors to do that which they undertook to do.'' (See, also, 14 C. J. 276, sec. 322.) [2] Without reciting the evidence in detail, it is sufficient to say that there is abundant evidence to the effect that at least Hulse and Abbott were promoters of the enterprise, and that Brumbly was selected as the agent of the promoters

and was by them set to work to procure subscriptions and collect money from subscribers. Under such circumstances, the promoters became liable for the return of the money of the subscribers, whether it was actually transmitted by Brumbly to Abbott or not. Accordingly, so far as Hulse and Abbott are concerned, the court did not err in denying their motion for a nonsuit, or in making the findings to which they take exception.

[3] As to the defendant Little, the situation is not the same. Little had no interest in the Merkel or Petrolia options, and had had nothing to do with arranging the plan of operation or setting Brumbly at work. Before the plaintiff rested, and Little made his separate motion for nonsuit, the only evidence connecting him with the transaction was his signature to the preorganization agreement and the testimony of Brumbly that the "Big Four" were Little, Dye, Abbott, and Hulse. At the same time Brumbly went on to say that he had had no conversation with Little, but that Abbott had stated, without Little being present, that "If we get Lee Little in the corporation we can sell to everyone in Calexico with his name in to help." Brumbly said also that later Abbott had sold a unit to Little. After the court had denied the motions of all the defendants for a nonsuit, some further evidence was given concerning Little's connection with the scheme. He himself testified that at Brumbly's request he subscribed for a unit and gave Brumbly a check for $500; and Abbott testified that Little's name was in his book as one of those who had paid their subscriptions. Little testified also that he was asked if they could use his name as a director in a company that was being formed, and that he expressed a willingness, "if it would help the cause any"; and that accordingly he signed the preorganization agreement and Brumbly signed it at the same time. Little stated that he had never attended any meetings and knew nothing further about what was being done. Abbott corroborated this, and said further that Little was not present at any time when they had any conversation regarding the matter of the Big Four Oil Association.

Such is the nature of the evidence upon which the liability of Little is predicated. And instead of showing Little to have been one of the promoters, it shows him to have been a subscriber, just as were plaintiff and his assignors; and

Little's signature to the preorganization agreement put him in a position corresponding to that of plaintiff and his assignors by reason of their signatures to the separate application blanks, each of which stated that it was to be attached to and become part of the original preorganization agreement. Whether or not the court was correct in its ruling on Little's motion for a nonsuit, we do not think the evidence as a whole justifies the finding that there was a contract between Little and either plaintiff or his assignor Stavron.

[4] In the specifications of error in the admission of evidence, appellants first direct attention to testimony given by Dr. Rankin, who was called out of order as a witness for his accommodation. At that time the trial judge could not well determine the relation of his testimony to the case at large. Dr. Rankin had been a subscriber under the original partnership scheme, and testified to certain statements then made to him by Brumbly. This evidence was not competent under the issues in this case, but it is without prejudice to the defendants.

[5] When defendant Abbott was on the stand he was asked whether he, Little, Dye, and Hulse had ever secured any lease of a company or association known as Silver Lake Oil Company; and he answered that he understood that there had been an option on the lease, but Hulse was "handling all that stuff." This was not one of the leases referred to in the preorganization agreement; but there is some evidence that if the corporation should be organized, Hulse intended to transfer that lease to the corporation. The ruling was not erroneous.

[6] Abbott was also asked whether he ever sought "to set aside any fact which might be stated" in a certain newspaper advertisement published by Brumbly, a portion of which was read to the witness. Abbott stated that he had never seen the advertisement, and the inquiry was not pursued further. The question was no doubt asked in an endeavor to elicit additional proof of Brumbly's agency, and there was no error in allowing the witness to answer the question.

[7] The appellants contend, in addition, that they are entitled to a reversal because there is no judgment against their co-defendant Dye. The omission to include Dye in the judgment is, however, not a grievance of which these

appellants may complain. The liability of promoters is a joint and several liability; and the judgment is not invalidated because its sting is felt by some only instead of all.

The judgment is affirmed as to the defendants Hulse and Abbott and reversed as to the defendant Little.

Works, P. J., and Craig, J., concurred.