# HENRY MOLINA *v.* RUDY LARGOSA.

## No. 4849.

JANUARY 23, 1970.

RICHARDSON, C.J., ABE, LEVINSON, KOBAYASHI, JJ.,
AND CIRCUIT JUDGE WONG FOR
MARUMOTO, J., DISQUALIFIED.

OPINION OF THE COURT BY WONG, CIRCUIT JUDGE.

Plaintiff bought stock in a newly formed corporation which failed. He sued the promoter of the corporation seeking to recover his investment. The trial court held that the promoter of the corporation was not personally liable. We affirm.

On April 15, 1963, plaintiff Henry Molina attended a meeting to discuss the formation of a corporation, Direct Selling Corporation of Hawaii. The corporation was to engage in selling stereo equipment under the trade name "Specialties Unlimited." The promoter of the corporation, defendant Rudy Largosa, was already selling stereo equipment under that trade name which he had registered on January 9, 1963.

At the meeting, Molina signed a "subscription form" for the purchase of $2000 worth of stock (40 shares at $50 per share) in the proposed corporation. The subscription form states, *inter alia,* that "said corporation will engage in the business of wholesale and retail merchandising." The form, however, does not set forth the capital of the proposed corporation or the extent of Molina's proportionate interest therein.

On May 3, 1963, Molina paid Largosa $2000, which Largosa deposited in a bank account under the name Specialties Unlimited.

On June 25, 1963, the officers of the corporation (including Largosa as president) filed the corporation's Articles of Association, and an affidavit as required by R.L.H. § 172-13 (HRS § 416-15). The affidavit lists Henry Molina as having subscribed 40 shares and paid $2000, and a total subscription price for all subscribers of $11,750. Thereafter the corporation failed.

Plaintiff contends that because the subscription form did not set out the total capital of the proposed corporation and his proportionate interest in it, there was no valid subscription contract. As a general proposition, in the absence of any statutory requirement (and the Hawaii statute is silent in this respect), no particular form is required if the intent of the parties can be collected from the writing. As one court put it in *Duplee* v. *Chicago Horse Shoe Co.,* 117 F. 40, 43 (7th Cir. 1902), *cert. denied,*

188 U.S. 740: "The real question is, Was such paper intended and accepted as a subscription?"

In this case the trial court reached an affirmative answer to that question, which conclusion is supported by the record. Although the subscription form did not state the total capital and Molina's interest, these were ascertainable by merely adding up the investments of all subscribers. This information is also obtainable from the affidavit filed with the corporation's Articles, which listed all subscribers and the respective amounts invested. The interest of any subscriber would then be the amount of his investment divided by the total investment in the corporation.

Upon filing of the said Articles and affidavit, the corporation came into existence. *Hitchcock* v. *Hustace,* 14 Haw. 232 (1902). In this jurisdiction, however, the mere fact of incorporation does not amount to an acceptance by the corporation of a subscriber's offer. There must be an expressed or implied acceptance of that offer. *Gillespie* v. *Camacho,* 28 Haw. 32 (1924). After payment of the subscription price by Molina, not only was his name listed as a stockholder in the affidavit filed with the corporation's Articles, but Molina himself on different occasions made inquiries concerning his stock certificate, and from time to time requested Largosa to sell his shares of stock. The acceptance by the corporation of Molina's offer and Molina's acknowledgment of such acceptance are, therefore, clearly supported by the record.

Molina may not now rescind his contract. In *Buffalo & J.R.R.* v. *Gifford,* 87 N.Y. 294 (1882), a subscriber made two installment payments pursuant to a subscription agreement, the corporation was formed and his name was placed on the corporation's stock ledger. It was held that the corporation could enforce the stock subscription agreement, recovering the balance due thereunder. *A for-*

*tiori,* Molina, who has paid the full amount provided in his stock subscription agreement, has no right to get his money back. See 61 A.L.R. 1463, 1501-4. It should be noted, in passing, that even if he were entitled to rescission, his action should be against the corporation and not the promoter.

The promoter may be discharged from liability to a third party (creditor) on a preincorporation contract by a novation, if the corporation assumes the contract, and the other contracting party assents to the substitution of the corporation for the promoter. *Marconi's Wireless Telegraph Co.* v. *Cross,* 16 Haw. 390, 395 (1905).

In the case of a subscription contract, however, the objective is a valid incorporation pursuant to the terms of the contract. Once that is accomplished, the contract has been performed. There is no need for a discharge by novation of the promoter from liability as the promoter is liable only if there is failure of such incorporation. *Johnson* v. *Hulse,* 83 Cal. App. 111, 256 P. 551 (1957); 41 A.L.R. 2d 477, 519-523.

Largosa promised to form a corporation, and he performed this promise. Plaintiff Molina got just what he paid for: stock in a corporation. There was no failure of consideration in the contract; only a failure of a corporation in which Molina had purchased stock. Clearly, if the corporation had succeeded, Molina would have been entitled to his share of the stock appreciation and any dividends declared.

Molina complains that shareholders' meetings were not held, and that his certificate of 40 shares was never delivered. A certificate is not necessary to make him a stockholder. *Hawley* v. *Upton,* 102 U.S. 314 (1880). His remedy for this complaint was to compel such meetings and delivery. These are not adequate grounds to support his claim that there was no contract with the corporation.

Molina complains that the affidavit of incorporation states the total capitalization as $12,000, while the certificate made out (but never delivered) to him states total capitalization at $60,000. His remedy for this evident error was reformation of his certificate.

Molina complains that the $2000 he paid Largosa was put in the bank account of Specialties Unlimited, and that Largosa never transferred this trade name to the corporation. The trial court found that this account was used by Largosa as a corporate account, and this finding is supported by the record.

It has been brought to our attention that the subscription form signed by Molina specifies "non-voting shares", while the Articles provide for "full and equal voting rights". The plaintiff did not raise this discrepancy at the trial (nor was it mentioned in plaintiff's briefs before this court), and it therefore cannot now properly be the subject of appeal. *State* v. *Robinson*, 50 Haw. 501, 443 P.2d 140 (1968); *Kauwa* v. *Dowsett*, 3 Haw. 625 (1875); Hawaii Supreme Court Rule 3(b)(4). The reasons for his failure then to raise this issue, we think, are fairly obvious. The parties had either intended that voting stock be issued to the plaintiff but had inadvertently used the wrong printed form; or the plaintiff was not concerned with whether he got voting or non-voting stock, so long as he had full rights to participation in the profits. In the highly improbable event that he had really intended to contract for non-voting stock, it is now too late for him to complain that when he got more than he bargained for, there was a failure of consideration. Further, since there was no showing that the parties had intended that the corporation to be formed was to issue more than one class of stock, the shares actually issued had to be voting common stock.

Affirmed.

Frank D. Padgett (*Padgett, Greeley, Marumoto & Akinaka* of counsel) for plaintiff-appellant.

John W. K. Chang (*Ronald Y. C. Yee,* General Counsel of Legal Aid Society of Hawaii, with him on the brief) for defendant-appellee.

---

DISSENTING OPINION OF ABE, J.

I disagree with the opinion of the majority of the court.

This action was filed by plaintiff Molina against defendant Largosa for the sum of $2,000 on account of money had and received.[1] The gist of the complaint is that plaintiff paid defendant $2,000 and that he has not received the consideration for which he had paid the sum of $2,000.

The evidence is uncontradicted that plaintiff subscribed and agreed to pay for 40 shares of "non-voting shares" at a par value of $50 per share and paid defendant the sum of $2,000 on account thereof.

In the formation of an informal contract, it is elementary law that an offer made by an offeror must be *unconditionally* accepted by the offeree. *Friel* v. *Jones,* 42 Del. Ch. 148, 206 A.2d 232 (1964) ; *Oregon-Pacific Forest Prod. Corp.* v. *Welsh Panel Co.,* 248 F. Supp. 903 (D. Ore. 1965). Here plaintiff by means of a printed subscription form which read "SUBSCRIPTION FORM FOR THE PURCHASE OF NON-VOTING SHARES" agreed to buy and subscribed for 40 shares of the non-voting stock of a corporation to be formed by defendant and others. The intent to subscribe for non-voting shares is explicitly and specifically stated in the printed form. I do not and cannot agree with the holding of the majority court that:

"The parties had either intended that voting stock be

---

[1] Plaintiff alleged that "defendant owes plaintiff $2,000 for money had and received from plaintiff on or about May 3, 1963, to be paid by the defendant to the plaintiff."

issued to the plaintiff but had inadvertently used the wrong printed form; or, the plaintiff was not concerned with whether he got voting or non-voting stock, so long as he had full rights to participation in the profits. In the highly improbable event that he had really intended to contract for non-voting stock, it is now too late for him to complain that when he got more than he bargained for, there was a failure of consideration. Further, since there was no showing that the parties had intended that the corporation to be formed was to issue more than one class of stock, the shares actually issued had to be voting common stock."

It is difficult to understand the court's holding because the elementary rule is that an offer must be unconditionally accepted by the offeree to become a binding contract. Here, the plaintiff offered to buy non-voting shares and it is not for this court to say that plaintiff intended to purchase other than non-voting stock when the subscription agreement so specifically states. Further, I believe the court is begging the issue by its statement that "since there was no showing that the parties had intended that the corporation to be formed was to issue more than one class of stock, the shares actually issued had to be voting common stock," because it does not in any way change the offer of the plaintiff to buy non-voting stock.

The uncontradicted evidence is that there has been no stockholders' or directors' meeting. It appears that the only act or acts which may be interpreted as the acceptance of plaintiff's offer to purchase 40 shares of non-voting stock is the filing of the articles of incorporation together with the affidavit of the officers; however, we have said in *Gillespie* v. *Camacho*, 28 Haw. 32 (1924), that the mere fact of incorporation does not amount to acceptance by the corporation of a subscriber's offer.

Further, the majority of the court holds that "after payment of the subscription price by Molina, not only

was his name listed as a stockholder in the affidavit filed with the corporation's Articles, but Molina himself on different occasions made inquiries concerning his stock certificate, and from time to time requested Largosa to sell his shares of stock. The acceptance by the corporation of Molina's offer and Molina's acknowledgment of such acceptance are, therefore, clearly supported by the record."

In my opinion, the facts recited by the court do not show an unconditional acceptance[2] of plaintiff's offer and I disagree with the holding of the court that acceptance of plaintiff's offer is "clearly supported by the record."

In the next paragraph the court says "Molina may not now rescind his contract." Here, Molina is not rescinding his contract. How can there be a rescission of a contract when a contract has not been formed?

There is no evidence to show that Molina's offer was *unconditionally accepted* by the corporation. Thus, there was no meeting of the minds and mutual assent was lacking; therefore, no contract was formed, and plaintiff is entitled to the return of $2,000 paid for 40 shares of non-voting stock because he did not get what he bargained for.

I would reverse.

---

[2] The record does not show that Molina knew that he was listed as owner of 40 shares of common stock with voting right. On the contrary, the record shows that a certificate of stock was issued in November 1964, but which was never delivered to Molina, which stated on its face Molina was owner of 40 shares of common stock of authorized capital of $60,000, and not $12,000 as indicated on Articles of Incorporation and affidavit of officers.