MERRILL, Circuit Judge:
 

 This action has been brought by appellants on a promissory note executed by ap-pellee and assigned to appellants by the payee. Jurisdiction is founded on diversity of citizenship. The appeal is taken from summary judgment rendered in favor of appellee. The question presented is whether appellee was entitled to set off debts owed to him by the payee against the amount due on the note. We agree with the District Court that he was.
 

 Telecheck International, Inc. (TCI) was formed in 1963 in the State of Hawaii largely through the efforts of appellee. In 1969 it entered into negotiations with Am-fac, Inc. to acquire Amfac’s building materials division. In 1970 agreement for the acquisition was reached but the means for financing it remained unsettled. In May, 1970 eleven directors and officers of TCI, including appellee, executed promissory notes in favor of TCI in the sum of $50,000 each, taking in return convertible debentures of TCI in the same amount. The notes were held by Amfac as security for the payment due on TCI’s acquisition. In May, 1972 TCI was adjudged bankrupt. Appellee, as a general creditor filed claims against the corporation totaling $117,746.34, all of which were allowed by the bankruptcy court and are not questioned here.
 

 Amfac exercised its right to repossess its assets and returned to TCI the notes it was holding. Appellants purchased the note of appellee from the trustee in bankruptcy and as assignees brought this action in the District Court for the District of Hawaii. (No claim is made by them to be holders in due course.) The District Court rendered summary judgment for appellee on the ground that he was entitled to offset against any amount due on the note his allowed claims against TCI. The right of setoff is provided by Section 68 of the old Bankruptcy Act
 
 [1]
 
 :
 

 In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.
 

 (Formerly codified at 11 U.S.C. § 108(a); current version at 11 U.S.C. § 553.)
 

 Appellants contend that appellee was not entitled to the right of setoff since the debts owing between him and TCI were not “mutual debts” within the meaning of the statute. “To be mutual, the debts must be in the same right and between the same parties, standing in the same capacity.” 4 Collier on Bankruptcy ¶ 553.04[3] (15th ed. 1981). Emphasizing that appellee stood as a fiduciary to TCI and gave his note to the corporation at a time when it was seriously undercapitalized, appellants make several arguments to the effect that TCI had a special claim to the promised funds; that appellee’s debt to TCI was in the nature of a trust fund and accordingly not subject to defeat by setoff. On examination, we find these arguments without merit.
 

 Appellants first rely on the proposition that “where the liability of the one claiming a setoff arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debts does not exist, and such person may not set off a debt owing from the debtor against such liability.” 4 Collier on Bankruptcy ¶ 553.04[3] (15 ed. 1981). They find application of this principle in the fact that at the time appellee executed his note . TCI 'was'seriously undercapitalized.
 
 [2]
 
 Undercapitalization
 
 *783
 
 standing alone, however, is not sufficient to render the debt of an officer or director to his corporation the equivalent of a trust fund. Two cases of this court are illustrative.
 
 [3]
 

 In
 
 Costello v. Fazio,
 
 256 F.2d 903 (9th Cir. 1958), three individuals started a plumbing partnership with some $50,000 of capital. Within a few years the business was in financial difficulty and the partners decided to incorporate. In anticipation of incorporation, all of the partnership capital except $6,000 was withdrawn and converted into debt evidenced by promissory notes to the partners. The corporation filed for bankruptcy two years later with the former partners submitting claims on their notes. In defending their claims before this court, the partners argued that mere undercapi-talization of the corporation alone was not sufficient to warrant subordination. The court responded that “much more” than undercapitalization had been shown:
 

 [The partners] stripped the business of eighty-eight per cent of its stated capital at a time when it had a minus working capital and had suffered substantial business losses. This was done for personal gain, under circumstances which charge them with knowledge that the corporation and its creditors would be endangered.
 

 256 F.2d at 910. Accordingly, the court subordinated the claims to those of the general unsecured creditors.
 

 The opposite result was reached in
 
 In re Branding Iron Steak House,
 
 536 F.2d 299 (9th Cir. 1976). There two partners started a restaurant which was later incorporated. At that time the partners canceled some $10,000 of the $109,000 of debt owed them by the partnership in exchange for 1,040 shares of stock. The corporation issued them notes for the remaining debt. The corporation later declared bankruptcy with one of the former partners submitting a claim on the notes. The court held that the
 
 Costello
 
 result was not controlling, reasoning:
 

 [H]ere the bankrupt did not begin to suffer business losses until several years after-its incorporation. There was thus no clear intention by [the partners] to shift their risk to other creditors in the face of business reverses. Indeed, there was no stripping away of the restaurant’s capitalization at all. * * * At no time was existing capital withdrawn and converted into debt.
 

 * * * * * *
 

 In our view, mere undercapitalization, standing alone, is not enough to justify the subordination of the legitimate claims of officers, directors, and shareholders of a bankrupt corporation * * *.
 

 536 F.2d at 302.
 

 Here appellee and his fellow officers and directors did nothing to strip away TCI’s capitalization or to attempt to reduee their risk to the detriment of other creditors. On the contrary they extended their own personal credit to aid TCI in the acquisition of new assets. In our judgment their actions in aid of their corporation did not amount to a breach of fiduciary relationship. There is, then, no basis for imposing a trust upon the amount due on appellee’s note.
 

 Appellants also argue that because the debentures held by appellee were convertible into capital stock, his debt to TCI was in the nature of an unpaid stock sub
 
 *784
 
 scription.
 
 [4]
 
 They then invoke the proposition that “where [the] trustee of a debtor corporation is seeking to recover from a stockholder the amount of his unpaid subscription for stock, the stockholder may not offset against such liability a claim owing to him from the debtor corporation.” 4 Collier on Bankruptcy ¶ 553.04[3] (15th ed. 1981). Whether a shareholder’s agreement with a corporation constitutes a stock subscription is determined according to the law of the incorporating state, here Hawaii.
 
 See Hoppe v. Rittenhouse,
 
 279 F.2d 3, 8 (9th Cir. 1960). On this point the Hawaii Supreme Court has stated:
 

 As a general proposition, in the absence of any statutory requirement (and the Hawaii statute is silent in this respect), no particular form is required if the intent of the parties can be collected from the writing. As one court put it * * *: “The real question, is, Was such paper intended and accepted as a subscription?”
 

 Molina v. Largosa,
 
 51 Haw. 507, 508-09, 465 P.2d 293, 294 (1970). Appellants have come forward with no evidence even suggesting that either TCI or appellee intended a stock subscription.
 

 The agreement, then, did not constitute a stock subscription. To convert it into one by analogy would violate the fundamental distinction between corporate shareholders and creditors. An old Massachusetts case,
 
 Pettibone v. Toledo,
 
 148 Mass. 411, 19 N.E. 337 (1889), gives the best statement of the distinction we have yet found. There creditors of a railway corporation sought to require the corporation’s bondholders to pay their unpaid subscriptions on the theory that the amounts yet unpaid constituted a trust fund for the benefit of creditors. The court held that there was no valid analogy to stock subscriptions and no trust fund was created. It stated:
 

 It has been held that all persons who deal with a corporation deal with it on the faith that its capital stock will be applied, if necessary, to the payment of its debts; and that, if the statutes of a state permit a corporation to do business before the whole amount of its capital stock has been paid in, the money which subscribers for stock have agreed to pay in for the stock they have taken is regarded as a part of the capital stock of the corporation. The admission of the subscribers as stockholders is the consideration for their promises to pay, and the corporation can recover the amount agreed to be paid, not merely as a debt due to the corporation, but as a part of the capital stock which the subscribers have agreed to furnish and put at the risk of the business. The unpaid subscriptions are a trust fund held for the benefit of the creditors of the corporation * * *.
 

 ******
 

 The distinction between a creditor and a stockholder of a corporation is plain. The position of a stockholder is not only not like that of a creditor, but it more nearly resembles that of a debtor of the creditors of a corporation. * * * [T]he property of the corporation, which must be applied to the payment of its debts, belongs equitably to the stockholders, and they are virtually the debtors of the creditors of the corporation, so far as it may be necessary to take this property to pay such creditors. If these defendants should lend the money as they have agreed, and should receive the bonds of the company, they would be entitled to have the bonds paid out of the property of the company when they matured, or, if the company was insolvent, to share with other creditors in this property. The defendants have no other control over the corporation than that which a creditor has over the property of his debtor, nor have they put or agreed to put their money at the risk of the business in any other sense than that in which every creditor puts the money he lends at the
 
 *785
 
 risk of the solvency of his debtor. If the capital stock of a corporation is a trust fund for the benefit of its creditors, and if subscribers to stock who have not paid their subscriptions are regarded as trustees of this fund to the extent of the subscription unpaid, then these defendants have agreed to become
 
 cestuis que trustent
 
 of this fund. We think there is no foundation for the analogy suggested.
 

 It is clear that the bill does not set out any special trust in favor of the plaintiffs. The defendants have made no promises to the plaintiffs, nor has it been agreed between the defendants and the company that the money should be paid and received upon a trust in favor of the plaintiffs. The plaintiffs have furnished railroad supplies, and the defendants have agreed to lend money to enable the company to complete its railroad, but this does not constitute a trust for the plaintiffs.
 

 19 N.E. at 337-39.
 

 The same is true here. We have found nothing in the law of Hawaii concerning the imposition of a trust on an unpaid bond subscription. In our judgment the Supreme Court of Hawaii would follow the principles set forth in
 
 Pettibone.
 

 We conclude that appellee’s liability to TCI was not in the nature of a trust and accordingly that appellee was entitled to offset against that liability his independent claims against TCI.
 

 JUDGMENT AFFIRMED.
 

 [1]
 

 . The new bankruptcy code, 11 U.S.C. § 101 et seq., became effective on October 1, 1979. Because this case was filed prior to that date, however, the former setoff provision governs.
 

 [2]
 

 . Appellants’ reliance on
 
 Bayliss v. Rood,
 
 424 F.2d 142 (4th Cir. 1970), on this point is misplaced. There two directors had agreed to lend funds to their corporation on a
 
 permanent
 
 basis as a condition to its receiving credit. They
 
 *783
 
 later withdrew the funds in view of the corporation’s impending bankruptcy. The court held them liable on the agreement to the trustee in bankruptcy, finding that they held the withdrawn funds in trust for the corporation. Appellants here make no allegation that appellee either agreed to loan funds to TCI on a permanent basis or withdrew funds from TCI in anticipation of its bankruptcy.
 

 [3]
 

 . Neither case involved a debt to the corporation arising out of capitalization efforts and thus there was no fund on which a trust could be imposed. The question in both cases was whether by virtue of breach of fiduciary duty shareholder claims against a corporation should be subordinated to the claims of other creditors. The principle involved, however, is applicable here.
 

 [4]
 

 . We note at the outset that this argument conflicts with the principle that “one holding an option to purchase shares of a corporation does not have a status prior to dissolution comparable to that of a subscriber of corporate shares, and he is not an equitable shareholder....” 12A Fletcher Cyc. Corps. (Perm.Ed.1972) § 5613 at 235.